JOLMAN *v.* ALBERTS.

1. RES JUDICATA—JUDGMENT—APPEAL AND ERROR—PLEADING.
   A decision on appeal in a former suit between the same parties, that a count stated a cause of action, became and is the law of the case.

2. APPEAL AND ERROR—TRIAL—INSTRUCTIONS.
   Where a question was raised by plaintiff's counsel in his opening statement, and the court, before any evidence was submitted, declined to instruct the jury on the question, saying it was dependent upon the proof that might be put in, and later, when evidence was offered, no objection was made by defendant, the latter was not prejudiced by the ruling of the court.

3. EVIDENCE—RES GESTÆ—COMPROMISE—ADMISSIONS.
   In an action for personal injuries caused by defendant's automobile colliding with a buggy in which plaintiff was seated, evidence by plaintiff's husband that immediately after the accident defendant offered to pay for having "the rig" repaired was admissible as *res gestæ*.

4. APPEAL AND ERROR—LIGHTS—EVIDENCE.

> In such action, where the court ruled out questions permitting defendant to explain why he did not have his "big lights" on, and later withdrew from the jury the question as to lights entirely, instructing them that defendant's car was lighted in conformity with law, the rulings were either favorable to defendant or were correctly made.

5. NEGLIGENCE—AUTOMOBILES—LIGHTS.

> Where defendant, who was a witness in his own behalf, claimed he could not see because of the intense lights of an approaching automobile, that he was driving at a speed of but four or five miles an hour, and did not see the buggy until he was within a few feet of it, when he thought he could pass it, it was a question for the jury, whether, under all the facts, defendant was negligent.

6. EVIDENCE—SECONDARY EVIDENCE—X-RAY PICTURE—EXPERT WITNESSES.

> The court was not in error in rejecting testimony by a medical expert as to what an X-ray picture showed, where the absence of the picture itself was unaccounted for.

7. TRIAL—INSTRUCTIONS—NEGLIGENCE.

> It was not error for the court to instruct the jury that the evidence was given to place them in the situation of the parties, and enable them to say whether, under all the circumstances, defendant was guilty of negligence.

Error to Muskegon; Sullivan, J. Submitted April 10, 1916. (Docket No. 46.)  Decided June 1, 1916.

Case by Sadie Jolman against Frank Alberts for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Clink & Farmer,* for appellant.

*Carpenter & Jackson,* for appellee.

OSTRANDER, J. The testimony introduced on the part of the plaintiff tended to prove that plaintiff's husband had driven his horse to the curb on a paved

street in the city of Muskegon; the buggy in which plaintiff was sitting being so close to the curb that she stepped into the buggy from the curb. Horse and buggy were headed south, and were on the west side of the street. It was about 9 o'clock in the evening, the nearest electric light was not burning, and the shade or shadow cast by nearby trees did not make discovery of the buggy on that account difficult. Defendant, going south on the street, ran his automobile against the buggy, and plaintiff was injured.

The court excluded from consideration two counts of the declaration, leaving one, the first, to be considered. In that count it is alleged that defendant, riding in and driving an automobile along Peck, "a public street, * * * negligently and carelessly drove and guided said automobile so that it ran into a buggy standing on the west side of said street near the curb," striking the buggy with such force as to break and crush it. It is contended, as it was when the cause was first before us (*Jolman* v. *Alberts*, 186 Mich. 643 [153 N. W. 11]); that this count states no cause of action. This contention we overruled, and the decision became and is the law of the case.

In his opening statement to the jury the attorney for plaintiff said, among other things, that a consequence of plaintiff's injury was that for three years (she was injured in August, 1912) she has not been able to do her work; "to have her own enjoyment; to go out in society as others go; to take care of her children as others do; to take her part in the family's life. * * *"

Counsel for defendant, no testimony having been offered, asked the court to instruct the jury that:

"Under no circumstances are they to take into account whether or not Mrs. Jolman is less able to take care of her children than she was before. If she is less able to take care of her children and damages ac-

crue, they don't accrue to her, but to her husband, and he has an action pending now."

The court declined to pass at that time upon the measure of damages, saying it was dependent entirely upon the proof that might be put in. There was an exception. The proof, so far as we are referred to it, was upon this subject given in answer to the question:

"What have you been able to do as to taking care of the children?"

The answer was:

"I haven't done anything as far as taking care of—combing the children's hair or helped them to dress, something of that sort."

No objection to the question was interposed, or to the testimony. The argument made in the brief for appellant in this court proceeds no further than did the objection made at the trial. I cannot imagine how the ruling excepted to prejudiced the appellant.

Plaintiff's husband testified that defendant said, in substance, that he would pay for having the buggy or "the rig" repaired or fixed up. The court refused to strike out the testimony. The argument is that this statement could relate to no more than compromise, and it is against public policy to allow plaintiff to use it as an admission of liability. This statement, according to the testimony for plaintiff, was made almost immediately after the collision occurred. In the charge the court said the testimony was admitted as *res gestæ,* to understand the transaction, and that the jury should give it such weight as they thought it was entitled to. It does not appear that appellant asked for any instruction upon the point. The exception must be overruled.

The headlights on defendant's car were not burning; only some small kerosene lamps being lighted. Such lights as were burning could be seen for a considerable

distance, but did not appreciably light the road for the driver. Defendant was asked why he did not have his "big lights" on. The objection made was that the fact called for was immaterial, and the objection was sustained. The court also excluded answers to the questions:

"Mr. Alberts, do you know whether it is customary for careful drivers and operators of automobiles in cities on city streets to use the large headlights at all?"

"Do you know, Mr. Alberts, whether or not it is the custom of careful drivers and operators of automobiles in the city of Muskegon when driving their machines upon the streets of this city to use large headlights?"

"Let me ask this question, Mr. Alberts: What can you say as to what the custom was of careful drivers and operators of automobiles in the city of Muskegon as to running their cars on the streets of the city lighted as your car was lighted that night, the night of this accident?"

Later on, during the argument of counsel for plaintiff, the court ruled that the preponderance of testimony showed that the defendant carried lawful lights; that his car was lighted in conformity with law. As has been stated, he withdrew from the jury the count in which failure to light the car was alleged as negligence, and counsel, when the ruling above referred to was made, withdrew his argument upon the subject of the headlights. The various rulings are involved by appellant's third, fourth, fifth, sixth, eleventh, and twenty-seventh assignments of error, and perhaps by others. When it is considered that the governing statute cannot be construed as requiring headlights on automobiles for the sole purpose of warning persons not in the car, but must be construed as requiring them for the purpose of lighting the way for some distance for the driver of the car (*Harnau* v. *Haight*, 189 Mich. 600 [155 N. W. 563]), it appears that the

rulings were either favorable to appellant or were correctly made. And these rulings and the exceptions based upon them are related closely to others, and to errors assigned upon the charge of the court. As has been stated, the appellant was a witness in his own behalf. He ascribes the collision to the fact that the lamps of an approaching automobile gave so intense a light that he could not well see objects in his path, and his testimony tends to prove that he was operating his car when and just before the collision occurred at a speed of but 4 or 5 miles an hour, and did not see the buggy until he was "within 8 or 10 or 12 feet of it"; that he did not intentionally strike it; that he thought he could go no further into the street without being struck by the approaching car, and supposed he could pass the buggy in which plaintiff was sitting. Witnesses for plaintiff testify that they saw appellant's car approaching 150 or 200 feet, running close to the curb.

It was a question for the jury whether, considering all of the facts as they found them to exist, appellant was prudent or was careless in driving his car upon the buggy. And this ultimate fact was, I think, fairly submitted to the jury, and no error committed in the rulings complained about or in the charge upon this subject.

It appears that while plaintiff was in the hospital an X-ray picture was taken for the purpose of discovering whether her spine was injured—whether there was a dislocation of vertebræ. The picture was not produced at the trial. Counsel for appellant referred to it in argument, stating to the jury that:

"It was up to them to produce that picture, and we have a right to infer when they don't produce it * * * that it is because that would have demonstrated conclusively that there was no subluxation of the vertebra there."

The court interrupted counsel, saying no inference was to be drawn from the fact that the picture was not produced. An exception was taken. Dr. Jacob A. Cramer had been sworn as a witness for defendant. He testified that he made the X-ray picture. He was asked:

"Did you see any visible condition in Mrs. Jolman that indicated any injury to her spine?"

The answer was excluded. The witness then testified that he was present when the X-ray examination was made; was not present when any other examination was made; that the picture taken would show the condition of the plaintiff's spine; that he examined the picture; that the last he saw of it was in the courtroom a year or so ago. He was asked:

"After making the X-ray examination that you did are you able to state whether or not there was an injury to the spine of Mrs. Jolman that would be or amount to a practical dislocation,"

the objection being that the question called for an interpretation of the picture and the picture was the best evidence. In the course of a colloquy the following occurred:

"*Mr. Clink: Q.* Have you tried to find that picture?
"*A.* Yes, sir; I just came from the hospital now.
"*Mr. Cross:* We would like to inquire of the plaintiff's attorneys whether they have that picture or know where it is.
"*Mr. Carpenter:* We have never seen the picture, Mr. Cross. On the last trial you said you were going to get it, but you haven't produced it. You may have it in the courtroom; I don't know. We never had it.
"*Mr. Cross:* It was here on the first trial.
"*Mr. Carpenter:* No; it was not. You never gave that plate in evidence, and you never produced it in the courtroom, not in my presence.

"*Mr. Cross:* It was here, and the superintendent of the hospital was insisting that it be returned.

"*Mr. Carpenter:* I don't doubt that you had it, as far as that is concerned, but we have never had it here; never seen it.

"*Mr. Clink: Q.* Did you go up to the hospital to ascertain about it, Doctor?

"*A.* I went up there to look for it myself this afternoon, but I wasn't able to find it.

"*Mr. Clink:* We certainly haven't got it. It was here once. I don't know what become of it.

"*Mr. Carpenter:* Your honor may remember that we waited for them some time to get that plate on the former trial, and it ended with their not producing it for the trial. I don't know whether they had it or not. We never have had it.

"*Mr. Clink:* I think now the absence of that picture is sufficiently accounted for, and I shall renew that question.

"*Mr. Carpenter:* I still object, your honor. That doesn't make it competent.    *    *    *

"*The Court:* I will not receive it. I will not take the answer.

"*Mr. Clink:* On the theory that the picture is not sufficiently accounted for or that it is incompetent?

"*The Court:* Well, you ought to know.

"*Mr. Clink:* Yes? Give me an exception.

"*Q.* Doctor, are you able from what you know of this case, that is, the case of the claimed injury of the plaintiff, from whatever observation you have made, including what you learned through the X-ray picture which you took, to state whether or not there was a partial dislocation of the vertebræ of the spine of Mrs. Jolman at that time?

"*Mr. Carpenter:* That is objected to as incompetent, no knowledge on the part of the witness to answer the question, and is trying to renew the description of the picture.

"*The Court:* The question goes back to the X-ray picture, and I am going to sustain the objection.

"*Mr. Cross:* Exception. Are we to understand from that, your honor, that the witness will not be permitted to testify to anything that he learned from the X-ray?

*"The Court:* Yes; I will do that. Yes, sir; that is my idea about that."

Exceptions were taken to the rulings. The court instructed the jury, in accordance with these rulings, that they were to assume nothing in relation to what the picture showed or did not show. There was no error in any of these rulings. The knowledge of the witness was derived from reading—interpreting—a picture. The picture was, of course, the best and only evidence of what it did or did not reveal. And, while it is matter of common knowledge that the correct reading of such a picture is a thing for experts, there could be no proper cross-examination of an expert interpreter in the absence of the thing interpreted.

Finally, it is alleged as error that the court said to the jury:

"The evidence in the case was given to place you in the situation of Mr. Alberts and to see the situation there that surrounded Mr. Alberts, with all the other circumstances and conditions and facts, so that you can take it all into consideration as to the parties up there, both Mr. Alberts and the plaintiff and her husband. * * * The evidence is put into the case so as to place you, as far as it may be, there at the place and time yourselves, and then say under your oaths whether it has been proven here by a preponderance of the evidence that Mr. Alberts did not do what an ordinarily careful and prudent man would have done under the circumstances, because the law says, and I instruct you, that the proof of the accident standing alone is not proof of negligence."

The argument is:

"The rule laid down by this court prevents attorneys from arguing that any juror should place himself in the situation of either of the parties to the suit, and it is also error for the court to charge the jury in a like manner."

This, I think, demands no comment save the one that

counsel has entirely misapprehended the rulings of the court relative to proper argument of counsel.

In my opinion, reversible error is not made to appear, and therefore the judgment is affirmed.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.