EARLEY v. SUTHERBY.

1. AUTOMOBILES—SPEED—STOPPING.
   The Court determines that defendant motorist could not have
   been going more than 30 miles per hour, where he stopped
   his car 65 feet from point of impact with plaintiff pedestrian.

2. SAME—LIGHTS FROM ONCOMING CARS—ASSURED CLEAR DISTANCE
   AHEAD.
   A motorist in this State who is blinded by the lights of on-
   coming vehicles must slacken his speed so as to be able to
   stop within the assured clear distance ahead in order to avoid
   being considered negligent as a matter of law (PA 1949, No
   300, § 627).

3. SAME—PEDESTRIANS—BLINDNESS FROM ONCOMING LIGHTS—IN-
   STRUCTIONS.
   Instruction that defendant eastbound motorist was guilty of
   negligence if jury found he was blinded by lights of west-
   bound oncoming cars and did not slacken his speed and have
   his car under such control that he could stop it within the
   assured clear distance ahead was not error, where defendant
   had testified that prior to his being blinded the highway
   was clear and that he did not see the plaintiff who traversed
   the highway from north to south at a point east of crosswalk
   at T intersection (PA·1949, No 300, § 627).

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur, Automobiles §§ 604, 605.
[2] 5 Am Jur, Automobiles §§ 205, 270.
[2] Duty and liability of vehicle driver blinded by glare of lights.
    22 ALR2d 292.
[3] 5 Am Jur, Automobiles §§ 734, 735.
[5] 3 Am Jur, Appeal and Error §§ 1027–1029.
[6] 5 Am Jur, Automobiles § 606.

4. SAME—DEBRIS ON PAVEMENT FROM JOLT DUE TO IMPACT—IN-
FERENCES—QUESTION FOR JURY.

Point of impact between eastbound automobile and southbound
pedestrian was a question for jury, where it appears accident
happened at 9 p. m. late in April and parties drew different
inferences as to point of impact from place on pavement
where accumulated debris from underside of car had been
deposited because of the jar or jolt involved.

5. EVIDENCE—HEARSAY—IMPEACHMENT—POLICE OFFICER—MEASURE-
MENTS MADE AT SITE OF AUTOMOBILE COLLISION.

Admission of testimony of police officer relative to accident be-
tween plaintiff pedestrian and defendant motorist because
of hearsay character, *held*, at most to have constituted harm-
less error, where it appears that his testimony was based, in
part, on measurements which he himself took and the evidence
was admitted for impeachment purposes.

6. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—PRE-
SUMPTIONS—EYEWITNESSES.

Presumption that plaintiff was in the exercise of due care, in-
asmuch as accident rendered him unconscious, may not be
invoked, where plaintiff introduced the testimony of one eye-
witness and defendant, himself an eyewitness, also testified
and physical facts surrounding the accident were also shown
which tended to show plaintiff was guilty of contributory
negligence.

Appeal from Wayne; Maher (Thomas F.), J. Sub-
mitted October 7, 1954. (Docket No. 47, Calendar
No. 46,183.) Decided November 29, 1954.

Case by J. Harry Earley against Lewis Sutherby
and Loretta Sutherby for damages sustained when
struck by automobile. Verdict and judgment for
defendants. Plaintiff appeals. Affirmed.

*McInerney & Swaby* (*Edward R. Stanton*, of coun-
sel), for plaintiff.

*Cary & BeGole,* for defendants.

BUTZEL, C. J. On April 27, 1951, at about 9 p.m.
plaintiff J. Harry Earley suffered very severe in-

juries by being struck by a car driven by Lewis J. Sutherby, and jointly owned with Loretta Sutherby, his wife, both defendants herein. According to the declaration, the accident occurred "near" the intersection of Ford avenue (also known as Northline avenue) and Lindbergh avenue in the outskirts of the city of Wyandotte, Michigan.

Plaintiff with his infant son had stopped at the Ford Tavern where he drank one glass of whiskey and conversed with a Charles C. Stamper who had "a couple bottles of beer." The Ford Tavern is situated at the northeast corner of Ford and Lindbergh avenues, adjacent to the sidewalks. The intersection is a "T" in shape, Lindbergh running north and south, terminating at Ford avenue. The door to the tavern faces Ford avenue and is about 7 feet east of the easterly edge of the sidewalk on Lindbergh avenue. Stamper left the tavern a few moments before the plaintiff and crossed to his car which was parked on the south side of Ford avenue, directly in and extending on both sides of the crosswalk. Plaintiff's car was parked immediately in the rear of Stamper's car. According to Stamper's testimony, plaintiff came straight out from the tavern to a point east of the Lindbergh avenue sidewalk and proceeded straight across Ford after first observing traffic conditions. Stamper first testified that plaintiff walked in the crosswalk. However, he positively stated on cross-examination that plaintiff crossed in the street east of the easterly line of the crosswalk which was not marked on the pavement as such but is considered a projection of the Lindbergh avenue sidewalk. He made this quite definite when he marked on a surveyor's map introduced as exhibit No 1 a point east of the crosswalk. Plaintiff held his infant son in his arms as he proceeded across. Stamper did not see defendant's car until the impact. He stated that defendant

was proceeding at a rate of speed of from 45 to 50 miles per hour. Defendant claims that he was going at the rate of from 25 to 30 miles per hour and upon striking plaintiff he came to a stop approximately 40 feet from the point of impact. Accepting as true Stamper's testimony that defendant travelled some 65 feet before stopping, defendant could not have been going more than 30 miles per hour in order to have stopped within that distance. This is further substantiated by defendant's statement that he did not bring his car to a more sudden stop as he was afraid that had he done so such a stop might have caused plaintiff further injury. Plaintiff was thrown some distance and severely injured. He was rendered unconscious and his mind was a blank as to just what occurred at the time. The child was thrown into the air with fatal results.

There is considerable testimony that the impact took place at least a short distance east of the crosswalk. The applicable ordinances of the city of Wyandotte provide:

"DEFINITION OF WORDS AND PHRASES.

" 'CROSSWALK.' (a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs from the edges to the traversable roadway. * * *

"PEDESTRIANS TO USE RIGHT HALF OF CROSSWALK.

"1.64. Pedestrians shall move, whenever practicable, upon the right half of all crosswalks.

"CROSSING AT RIGHT ANGLES.

"1.65. No pedestrian shall cross a street at any place other than by a route at right angles to the curb or by the shortest route to the opposite curb except where crossing lanes are marked or indicated upon a street or highway, in which case, pedestrians shall cross within such lanes.

"WHEN PEDESTRIANS SHALL YIELD.

"1.66. (a) Each pedestrian, crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection, shall yield the right-of-way to all vehicles upon the roadway."

In the light of the foregoing ordinances and facts, the jury rendered a verdict of no cause of action. It is supported by competent testimony and will not be disturbed.

The court held that defendant was entitled to go at a reasonable speed in the sparsely-settled district of Wyandotte where the accident occurred. Plaintiff does not claim that this ruling was error.

Defendant testified that he was going at a reasonable speed; that there were no cars ahead of him; that he did not see plaintiff crossing the street. He stated, however, that at the time a car was coming in the opposite, or westerly, direction and as it crossed the railroad tracks nearby its lights temporarily blinded defendant but only for a brief interval or, as he stated, for some 50 to 100 feet. Plaintiff requested the court to charge that:

"The defendant * * * is guilty of negligence as a matter of law in that the defendant * * * being blinded by the lights of oncoming cars did not slacken his speed and have his car under such control * * * that he could stop it within the assured clear distance ahead as required by the laws of this State."*

The charge to the jury repeated this request verbatim except for the words "as a matter of law." Plaintiff claims error. We recognize that Michigan evidently is among those jurisdictions which apply the strict rule requiring a motorist who is blinded to slacken his speed to avoid being considered negli-

---

* See PA 1949, No 300, § 627 (CLS 1952, § 257.627, Stat Ann 1950 Cum Supp § 9.2327).—REPORTER.

gent as a matter of law. Compare *Ruth v. Vroom,* 245 Mich 88 (62 ALR 1528); *Pearce v. Rodell,* 283 Mich 19, 34; *Gembolis v. Rydeski,* 258 Mich 521; *Budnick v. Peterson,* 215 Mich 678; with *Gleason v. Lowe,* 232 Mich 300; *Jolman v. Alberts,* 192 Mich 25. See, also, annotation 22 ALR2d 292. However, defendant testified that prior to being blinded the highway was clear and that he did not see plaintiff. Under such circumstances we cite the case of *Patt v. Dilley,* 273 Mich 601, 605, where we declined to apply the rule in *Ruth v. Vroom, supra,* but said:

"If plaintiff was not there before defendant was blinded, then the question of when defendant should have seen him was a matter of fact for the jury."

Accordingly there was no error in the charge given by the court on this point. The facts indicate that plaintiff apparently came out from behind the car proceeding in a westerly direction and walked into the path of the defendant's car.

To offset Stamper's testimony defendant offered the testimony of a police officer who had arrived almost immediately after the accident. He received information from Stamper and also took measurements. He found that debris was deposited on the road some 8 or 9 feet east of the crosswalk and marked on the map where the debris was found. This was at a point several feet east of the notation "point of impact" as described by Stamper. Defendant claims that the position of such debris, which frequently accumulates under an automobile so that a mere jar or jolt will shake it loose, established the point of impact. Plaintiff claims that if the car was going as rapidly as the witness described, the debris would have been carried a distance before it fell to the pavement, therefore, making the point of impact somewhat west of its final resting place, or on or closer to the crosswalk. This

also is a question of fact which was decided by the jury.

Plaintiff claims as error the court's failure to charge that the officer's testimony insofar as it consisted of what Stamper told him was incompetent except for impeachment purposes. The officer testified partially as to what Stamper told him about the accident and partially as to the results of his own measurements taken at the scene. Even if it was error to fail to so charge the jury as requested, in view of the other testimony it was not prejudicial to the plaintiff and at the most constituted mere harmless error. CL 1948, § 650.28 (Stat Ann § 27.-2618). During the course of the trial the judge allowed the evidence in for impeachment purposes.

It is further claimed that there was error not to charge that inasmuch as plaintiff was rendered unconscious and had no recollection of what occurred, he was presumed to have exercised due care. However, plaintiff introduced the testimony of Stamper, an eyewitness. Defendant, himself an eyewitness, also testified, and physical facts surrounding the accident were shown which tended to show the contributory negligence of the plaintiff. Under such circumstances any presumption of due care on the part of the plaintiff was overcome and disappeared. *Schillinger* v. *Wyman,* 331 Mich 160; *Swartz* v. *Dahlquist,* 320 Mich 135; *Mallory* v. *Pitcairn,* 307 Mich 40; *Barry* v. *Elkin,* 332 Mich 427.

We find no error, and the judgment on the verdict is affirmed, with costs to defendant.

Carr, Bushnell, Sharpe, Boyles, Reid, Dethmers, and Kelly, JJ., concurred.