## MARYLAND CASUALTY CO. v. DICKEN.
### No. 11577.

Court of Civil Appeals of Texas. Dallas.
Feb. 9, 1935.

Rehearing Denied March 16, 1935.

Head, Dillard, Maxey-Freeman & McReynolds, of Sherman, for appellant.

Webb & Webb, of Sherman, for appellee.

BOND, Justice.

The appellee, A. E. Dicken, an employee of Sherman Poultry Company, instituted this suit in a district court of Grayson county, to set aside a final award of the Industrial Accident Board, denying compensation, and to recover from appellant, Maryland Casualty Company, for disability caused by an alleged injury sustained by him in the course of his employment.

All the jurisdictional facts are pleaded, the necessary procedure under the Workman's Compensation Law (Rev. St. 1925, art. 8306 et seq., as amended) invoked to confer the jurisdiction, and the allegations as to the cause of the injury and the existence of total permanent disability are fully disclosed in appellee's petition.

The appellant interposed a general denial and special answer, denying that appellee was injured in the course of his employment; that the employer had knowledge or notice of the injury within thirty days; and that, if in fact, the injured employee's capacity to work has been diminished, it is the result solely

from tonsilitis and otitis existing prior to the injury; and, in the alternative, appellant pleaded that, if appellee sustained any injury, it was only the loss of hearing of his right ear.

The cause was submitted to the jury on special issues, and the verdict discloses the following findings: (1) That the plaintiff gave notice to his employer of the injury within thirty days from the date of his alleged injury; (2) that plaintiff was injured in the course of his employment; (3) that plaintiff's injury resulted in his total permanent incapacity to work; (4) that a manifest injustice and hardship will result to plaintiff, if the allowable compensation is not paid in a lump sum; (5) that plaintiff's daily wages at the time of his injury were $2.40; and (6) that the injury to appellee's ear was not caused by disease. Upon these findings, the court, on motion, entered judgment, annulling the award of the Industrial Accident Board, and awarding to appellee the sum of $2,912.14, with interest, payable to himself and attorneys in a lump sum.

As above stated, the only finding of incapacity is that Dicken's injury produced total permanent incapacity to work. There is no finding of any disability less than total permanent incapacity. The contention of appellant is that the testimony will not support the findings of the jury.

The facts, briefly stated, are: Dicken was employed by the Sherman Poultry Company, and, while in the course of his employment, standing upright, was struck on the right side of his head and anterior to the ear by an empty barrel weighing eighteen or twenty-two pounds, which had been dropped from a loft above. The maximum distance the barrel had fallen was four feet. According to plaintiff's testimony, it produced no blood, did not knock him down, raised a bump, which he says was about the size of a "bantam egg." He turned sick and blind at the time, but soon recovered. After being hit, he put the barrel in its usual place, went outside of the room for about fifteen minutes until "the sick spell kind of wore off," and then returned to work. He lost no time from his work on account of his injuries. The injury occurred about 2 o'clock a. m., November 13, 1931; Dicken continued to work through the remainder of the night, and, outside of two days due to illness, he continued to work with the company to the close of the season, December 22, 1931. He was never treated by a physician for the injuries he sustained, and never sought medical advice. According to

his statement, and supported by that of his wife, he has since the injury encountered trouble in his right ear and in his head; that physical efforts and labor increased his pain; that he is deaf in his right ear, has a roaring in his head, and pain in his body; that he has lost weight, cannot rest or sleep; and that he appears to be growing worse.

Appellee's employment with the Sherman Poultry Company had ceased, because of the close of the season, and, thereafter, appellee was engaged to do manual labor by other employers, and continued the work so long as they had work to be done. His injuries have never caused him to cease doing the usual task of a workman, though handicapped by pain and sickness, as disclosed by the testimony.

It is, we think, a correct rule of law that a jury question is raised, if, disregarding all adverse evidence and giving credit to all evidence and indulging every legitimate construction favorable to the plaintiff, which might have been drawn from the facts proven, a jury might have found in favor of the plaintiff. In all cases, we may say, the evidence must be sufficient to warrant a reasonable belief in the existence of the fact which is sought to be inferred. If there is any substantial evidence in the case which tends to prove a total permanent incapacity of the injured employee to work, under the meaning of the compensation law, then it becomes the duty of the trial court to submit the issue to a jury for its determination.

In the case of Texas Employers' Insurance Company v. Burnett (Tex. Civ. App.) 52 S. W.(2d) 771, 772, the court said: "Where reasonable minds can find from the evidence that the plaintiff's injuries are permanent and totally disable him from performing the usual tasks of a workman in such way as to enable him to procure and retain employment, the rule is, stated affirmatively, that a verdict in his favor on the issues of total permanent incapacity should be affirmed."

In the instant case, we think, it cannot be said that there is no evidence in the record from which defendant's total permanent disability may not be inferred by the jury. There were facts proven from which a jury might, and they evidently did, conclude with reasonable certainty that the extent and duration of plaintiff's disability was total and permanent. Therefore, this court, under the circumstances, would not be warranted in holding the evidence insufficient to raise a question for the determination of the

jury and reverse and render the case on that account.

Appellant further assigns error on the action of the court in submitting to the jury the issue of payment of the compensation in a lump sum, basing the contention on the evidence being insufficient to authorize such an award. The petition alleges, viz., "That plaintiff is a poor man; that his age is twenty-six (26) years; that he is a married man, having a wife and two children; a boy seven years old and a girl three years old. That he owns no property and has no source of income, save and except from his labor. * * * That sixty (60%) per cent. of his average weekly wage, payable in weekly installments, with one third (⅓) deducted therefrom, is entirely insufficient to support him and his wife and children, and to feed and clothe them, and to educate said children and pay house rent. That it would be manifestly unfair and unjust to pay his compensation in weekly installments, and not in a lump sum. That if his compensation is paid him in a lump sum, he will carefully conserve same. That he is a prudent spender, and after paying his debts, he will purchase a home to house himself and his family, and a little acreage upon which he can run a chicken ranch, and have garden stuff." The following is the entire evidence, excepting the findings by the jury of appellee's total permanent incapacity; the appellee testified:

"Q. Your age is what? A. 28.

"Q. Are you a married man? A. Yes, sir.

"Q. Have you any property? A. No, sir.

"Q. Have you any source of income? A. No, sir."

By the terms of the Workman's Compensation Law, the relief intended to be afforded the injured employee is by compensation in equal weekly payments of 60 per cent. of his regular wages, and "in any case where compensation is payable weekly at a definite sum and for a definite period, and it appears to the board that the amount of compensation being paid is inadequate to meet the necessities of the employee or beneficiary, the board shall have the power to increase the amount of compensation by correspondingly decreasing the number of weeks for which the same is to be paid allowing discount for present payment at legal rate of interest; provided that in no case shall the amount to which it is increased exceed the amount of the average weekly wages upon which the compensation is based; provided it is not intended hereby to prevent lump sum settlement when approved by the board." (Section 15a, art. 8306, Rev. St. 1925.)

■ The law further provides that employees suffering total permanent incapacity for work and earning wages may be paid in lump sum in lieu of equal weekly payments. This class of payments is denominated "special cases," based on "manifest hardship and injustice." These cases are not necessarily determinable by the relative poverty of the claimant. The statute undertakes, in our opinion, to leave it to the sound discretion of the court or jury as to what constitutes a special case for which a lump sum award may be made. The error, in this instance, if any, in awarding to appellee the allowable compensation in lump sum, would not necessarily require a reversal of the judgment, as evidently the award could be corrected and the judgment reformed by this court. However, as the case must be reversed and remanded for other causes hereinafter pointed out, we pretermit reformation of the judgment.

Complaint is made on the refusal of the court to submit to the jury appellant's timely requested special issues, viz.: "Do you find from a preponderance of the evidence that plaintiff's hearing was impaired by reason of his having been hit on the head by a barrel on the 13th day of November, 1931?" This question was followed by an explanation that, if answered in the affirmative, then answer the next question, viz.: "Do you find from a preponderance of the evidence that impairment of the hearing in his right ear, if any, was the only injury which he received?" The appellant joined the issue with appellee in pleading the following: "If the plaintiff received any injury in the course of the employment alleged by him (and the defendant denies that he did) it was not such injury as incapacitated the plaintiff for work within the meaning of the Workmen's Compensation Law. If he received any injury it was only the partial or complete loss of hearing in his right ear. The law excludes from the meaning of terms 'total incapacity for work' and 'partial incapacity for work' the loss of hearing unless it be the complete and permanent loss of the hearing in both ears."

The testimony reflected by the record on this question is that a barrel struck appellee on the right side of his head above the ear; appellee testified that prior to the injury, he had never suffered ear trouble or earache or deafness in the ear, and that since the injury he has discovered ear trouble; Dr. Donaho testified that, upon examination of ap-

pellee, he found "that his right ear, in his right ear, he was deaf"; Dr. Carter, an eye, ear, nose, and throat specialist, testified that he found appellee had a deafness in his right ear about 90 per cent.; that the hearing in his left ear was normal; that he had a chronic infection of the tonsils, and that the eustachian tube was partially closed, and evidence of chronic inflammation and catarrhal condition in the middle ear, which, in his opinion, caused the deafness in appellee's right ear; Dr. Curlee testified that in July, 1926, he treated appellee for throat trouble and earache; that at that time he had both chronic and acute tonsilitis; and that he had inflammation of the ear canal, and trouble in the middle ear, the probable effect of which would impair his hearing. All of the medical experts discounted appellee's testimony that the blow on the head caused other injuries to his body. Appellee further testified, by deposition, viz.: "Q. Outside of the difficulty in your hearing, you have entirely recovered from the blow? A. Yes, sir."

In response to a requested special issue, the jury found that appellee's deafness was not caused by disease, which we think finds support in the testimony, thus leaving the issues remaining, as to whether the deafness was due to the result of the blow, and whether the loss of the hearing in the right ear was the only injury appellee received. These issues are clearly raised by the pleadings and evidence.

To accentuate the importance of this defensive issue, appellant requested a special charge, viz.: "For your guidance in answering question No. 7, No. 8 and No. 9 (questions involving permanent disability), or such of them as you may answer under the court's instruction, the court makes this explanation: 'Neither impairment of hearing, nor the total or partial loss of hearing in one ear, constitutes a permanent incapacity to labor, under the provisions of the law'." The court refused to submit the quoted issues and the necessary explanation. We think they should have been given so as to instruct the jury, and have a finding on appellant's special defense.

The statute controlling the submission of special issues makes it the duty of the court not only to submit all the issues made by the pleading and evidence, but to give to the jury such explanation as may be necessary for their guidance in answering the questions. Article 8306, § 12, R. S. 1925, provides, as special compensation for the complete and permanent loss of hearing in both ears, 60 per cent. of the weekly wages during 150 weeks. From that, we think the inference arises that deafness in one ear, as the issues are here presented, caused by an injury not attended by any other injury, is not compensable. Therefore, the pleadings and evidence raising the issue of fact that if appellee received any injury in the course of his employment, it had no other result than to produce total or partial deafness in one ear, an independent ground of defense to appellee's claim for total permanent incapacity. The court erred in refusing to give the special issues and the instruction submitted to guide the jury in answering the questions material, we think, to avoid appellee's recovery on the ground of total permanent disability.

Appellant complains of the action of the court in refusing to submit a special instruction hereinafter set out, limiting testimony offered by appellee as a basis for the jury's findings on the amount of such wages. In order for appellee to recover the allowable compensation for total or partial incapacity, it was necessary to establish his daily wages at the time he claims to have been injured. The testimony is that appellee had not been employed for substantially the whole of twelve months preceding his injuries; that the work in which he was engaged was seasonal, limited practically to November and December of each year; and that 20 cents an hour for an eight-hour day was the amount paid to all other employees of appellee's grade or rank. H. F. Ryan, the president and manager of the Sherman Poultry Company, testified that appellee's wages were 20 cents an hour, and this amount was paid to him by check of the company; that he knew of no other amount having been paid to him and no one had authority to pay more; and that 20 cents an hour was a fair and reasonable compensation for such employment. Appellee testified that his brother, Autrey Dicken, foreman of the company, hired and paid him 30 cents an hour— 20 cents by the company check on Saturdays, and 10 cents an hour in cash on the following Mondays. The cash payment was made in the absence of other employees of the company, so that they would not know what was being paid to him, the other employees being paid only 20 cents an hour; that he was the only employee, so far as he knew, who was getting more than 20 cents an hour; that the regular basis of the pay for all other employees was 20 cents an hour; that on Saturdays the company would pay him by check the 20 cents an hour, and on Mondays his brother would hand him in cash, in the ab-

sence of other witnesses, an additional 10 cents an hour. Autrey Dicken testified that he took the cash payment out of the company's cash drawer on Mondays and paid it to his brother, in substantially the way as related by appellee.

The Workman's Compensation Law (Rev. St. 1925, art. 8309, § 1, subd. 3) provides that "when by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work, * * * it [the average weekly wages] shall be computed by the board in any manner which may seem just and fair to both parties." The work in which appellee was engaged being seasonal and confined largely to the two months of the year, the daily wages appellee was then receiving was important for the purpose of giving the jury a basis upon which it could estimate the average daily wages. The court submitted the issue for the determination of the jury as to appellee's daily wages at the time he claims to have been injured, and, in the language of the statute, instructed them to determine the question "in a manner which seemed to you (them) just and fair to both sides." The jury found the average daily wages of appellee to be $2.40—30 cents per hour. Appellant submitted the following special instruction: "If you believe and find from a preponderance of the evidence that the plaintiff was paid ten cents per hour in cash by his brother, Autrey Dicken, in addition to the amounts paid him by check, you will not consider any evidence as to any cash payment, if any, in answering question No. 16 propounded in the Court's charge." (Question No. 16 is the submission of appellee's average daily wages.) We believe that the instruction should have been given.

■ In our opinion, the charge clearly warned the jury that appellee was not entitled to receive by any secretly unauthorized method more than 20 cents per hour, paid in the usual way, properly and openly paid to him and other employees doing the same kind of work. The record reflects that outside of this secret and unauthorized payment by the brother, the only evidence as a basis for a finding of the jury was 20 cents an hour, and it is at least reasonably probable that the jury would not have found an amount in excess of 20 cents an hour. Thus, manifestly, by the court's refusal to give this requested charge, the appellee is being rewarded, and the appellant is being victimized by this unauthorized and unjust extra payment.

■ It is next insisted that the court should have allowed Dr. Carter to testify that upon examination he found appellee's skull or cranium normal by an X-ray examination; stereopticon X-ray showed no fracture of the skull, either on the side of his head or the area of the base of the skull. It must be conceded that in the light of this record the testimony is highly material. The only objection raised as to the proffer was that the X-ray film was the best evidence. We do not think so.

X-ray films are not susceptible of being understood by one not skilled in their interpretation, and would not be intelligible to the jury without explanation. They are valuable only when supported by the testimony of a person skilled in the art. X-ray films are merely illustrations of the subject it represents, and is not the best evidence of the condition of the part of the body shown thereby. The film requires interpretation and explanation by a skilled witness. The best evidence is always that which best informs, so that the court or jury may better view the subject under inquiry. The interpretation of a medical expert establishes a fact as to what the film discloses, and does not prove the film itself, and his interpretation of it supports his diagnosis of the subject.

In McKelvey on Evidence, page 452, the rule is stated that "an X-ray picture is not subject to the rule (best evidence), as the testimony by experts as to what it contains is the best evidence." So, also, in Vale v. Campbell, 123 Or. 632, 263 P. 400, 401, the court says: "It was proper examination to have said physicians, while witnesses, testify to the results of that examination. The X-rays themselves were admissible as evidence, but only when supported by the testimony of the party taking them or an expert who knew them to show accurately the true condition of the object represented thereby. X-ray photographs are used as other maps, plats, or representations of physical objects are employed as evidence. They are valuable only when supported by the testimony of a person. They are used for illustrations. X-ray photographs differ from ordinary photographs, in this, that the ordinary person is not sufficiently familiar with them to be able at all times to discern what they represent. It is competent for one who is an expert in such matters to explain the X-rays under proper supervision, so that the court and jury may view the picture as the witness does."

We believe that the court erred in excluding the proferred testimony of Dr. Carter,

and, if the film, which the evidence discloses was in the possession of the witness, would have been a further aid to the investigation, the process of the court may have been used to have it forthcoming. The doctor's testimony should not have been excluded on the objection assigned.

For the errors above stated, we conclude that the judgment should be reversed and the cause remanded, and it is so ordered.

Reversed and remanded.