**J. M. DRAKE, Appellant,**

v.

**Alvis H. WALLS et ux., Appellees.**

**No. 15827.**

Court of Civil Appeals of Texas.

Dallas.

June 9, 1961.

Rehearing Denied July 7, 1961.

Brundidge, Fountain, Elliott & Bateman, Roger A. Hansen, Dallas, Boyd & Veigel, McKinney, for appellant.

Woodruff & Hill, Dallas, for appellees.

YOUNG, Justice.

This is a damage suit arising out of an intersectional collision of automobiles. The occurrence was during the afternoon of June 13th, 1959 at the intersection of Elm, an east-west street, and Wilcox, running north and south in McKinney, with plaintiff Mrs. Walls traveling west on Elm and defendant Drake coming to the intersection from the north of Wilcox. The case was submitted to a jury on issues involving negligence of Drake and contributory negligence of Mrs. Walls; reuslting in a verdict and judgment in favor of plaintiffs (appellees) for around $2,700 from which this appeal is taken.

With respect to the collision, plaintiff, Mrs. Wells testified that immediately prior thereto she was driving westwardly along

Elm Street on her way to a downtown drug store; being well familiar with the route, having traveled it many times; that as she came into the area of the particular intersection, going possibly 25 to 30 miles per hour, there were no cars in the intersection or ahead of her going in the same direction, but that to her right on the northeast corner of Wilcox and Elm was Davidson's Grocery facing on Elm, where some three or four cars were parked, head-in fashion; that she did not see the defendant's car until it was pulling into Elm Street from the north on Wilcox or from her right-hand side; that when defendant saw her he stopped with hood of car some 6 feet out in the intersection angling to the left and blocking her lane of traffic, she being 2 to 4 car lengths back, that she immediately applied or "hit" her brakes, dragging tires, leaving skid marks, but could not avoid striking defendant's left front fender with her right front fender, causing "quite a jolt"; that Elm Street was some 18 to 20 feet wide and ahead of her on Elm was a car coming east and she could not swerve to the left without risk of running into it and that the day was clear and dry.

J. M. Drake, defendant, testified that he was well familiar with the particular street area, there being a stop sign on Wilcox about a car length back from the intersection; that he was on his way home along Wilcox driving a 1951 Ford occupied by his wife, intending to turn left on Elm; that he pulled over to the stop sign and stopped, looking both ways, seeing nothing and in low gear pulling up past the cars parked at Davidson's Grocery on his left to some 4 feet into Elm where he could see to the left for traffic on Elm Street, then seeing the Walls car when he stopped; that Mrs. Walls was 50 or 60 feet away, coming fast "making about 45 or 50"; hearing her tires skidding on pavement at the time, moving straight forward until she hit him, defendant having no time to get out of her way.

In addition to the foregoing, appellant presents at considerable length an analysis of all testimony with respect to scene of collision and its background—all in support of points one and two that his motion for instructed verdict should have been sustained; to effect (1) of no evidence of any probative force of negligence on part of defendant Drake; and (2) that all evidence established that Mrs. Walls was contributorily negligent as a matter of law. Defendant concludes the narrative of material facts by asserting that the evidence appears undisputed in the record save as to three items all of which he endeavors to demonstrate as immaterial; that is (1) of whether Drake's car extended out into Elm Street only some 4 feet according to him, or some 6 feet according to Mrs. Walls; (2) that Mr. and Mrs. Drake and Davidson, the groceryman, all testified to seeing no cars approaching from the west on Elm at the time, while Mrs. Walls testified to a yellow car coming towards her on Elm Street from the west; and (3) testimony relative rate of speed of plaintiffs' car.

Substance of the numbered jury issues and answers must be stated: (1) that the defendant failed to keep a proper lookout; (2) that he drove his automobile into the intersection when Mrs. Walls' automobile was approaching so closely on Elm Street as to constitute an immediate hazard (as defined in the charge); (4) that defendant's conduct as found in Issue No. 3 was negligence; (7) that defendant's conduct in stopping his automobile in the westbound traffic lane (north one-half) of Elm Street was negligence; (10) that defendant's conduct in driving his automobile into the north half of Elm Street when he could not see Mrs. Walls' automobile approaching from the East was negligence; (12) that defendant entered the intersection at a time when such movement could not be done in safety; (13) that defendant's conduct in so entering the intersection was negligence; (15) that defendant's failure to swerve or turn his automobile was negligence; (18) that defendant's failure to sound the horn on his automobile was negligence; (20) that defendant failed to yield the right-of-

way (as defined in the charge) to Mrs. Walls' automobile; (21) which was negligence; (23) that the accident was not unavoidable. All necessary issues on proximate cause were answered in the affirmative; and all issues on contributory negligence of Mrs. Walls were answered in her favor; (lookout, excessive speed, her failure to turn to the left just before the collision, failure to make proper application of her brakes, failure to sound horn.)

 We have here the all too frequent case of an intersectional collision, caused by negligence, direct or contributory, of the respective parties; and hence find no difficulty in overruling appellant's points one and two to effect of court error in failing to grant his request for peremptory instruction at close of testimony. Despite facts that are generally undisputed, negligence or not is for the jury if the evidence as a whole is susceptible to diverse inferences. Nor do we deem it necessary to discuss at this juncture intermediate points to effect that the jury answers to special issues 1, 3, 4, 7, 10, 12, 13, 16, 18, 19, 20 and 21 are each against the great weight and preponderance of the evidence. However, greater difficulty is attendant upon a disposition of point 18 complaining that special instruction No. 6, over defendant's objection, amounted to a general charge and had the effect of erroneously instructing the jury that defendant owed a duty to yield the right-of-way to Mrs. Walls; and involves the court's action and ruling with respect to the

### Wilcox Street Stop Sign.

██ In trial pleading plaintiffs had alleged that the intersection in question is controlled insofar as traffic on Wilcox is concerned as it crosses Elm Street by a stop sign, that is, traffic approaching this intersection on Wilcox Street and intending to cross or turn on Elm must stop and yield the right-of-way on Elm Street. To the initial questioning of Mrs. Walls about this stop sign by counsel, objection had

been made to any evidence concerning the stop sign until it was established that same had been placed at the corner under lawful authority; the court sustaining the objection "from here on, but not to that particular question", and no evidence touching the lawful establishment of the stop sign at that location was thereafter offered. In connection with Issue No. 20, inquiring of whether "at the time, place and on the occasion in question, J. M. Drake failed to yield the right-of-way" to Mrs. Walls' automobile, the following special instructions were given to the charge: (6) "With reference to the term 'right-of-way' you are instructed that the driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto, although not a part of a through highway, and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed. * * *" (9) "you are further instructed that 'right-of-way' means the privilege of the immediate use of the highway." Instruction 6 above was erroneously given; absent of proof of maintenance of this stop sign by lawful authority. See Yellow Cab & Baggage Co. v. Mason, Tex.Civ.App., 266 S.W.2d 463, reversed on other grounds 153 Tex. 344, 269 S.W.2d 329; Daniels v. Ramirez, Tex.Civ.App., 209 S.W.2d 972; the court inconsistently with its prior ruling thus instructing the jury that the stop sign had statutory significance. (Art. 827a, § 12, Vernon's Penal Code.) Otherwise stated, the instruction told the jury that such a duty was imposed by the stop sign; to that extent Mrs. Walls having the right-of-way; the vice extending to Issue No. 20 under the definition of right-of-way as "the privilege of the immediate use of the highway." But appellees argue that appellant, having admittedly stopped at that sign, it became immaterial whether or not there was proper proof of his duty to do so. Manifestly, the true situation was this:

the stop sign had no statutory significance, Drake and not Mrs. Walls had such superior claim to right-of-way as is inherent in Art. 6701d § 71, V.A.C.S., being a driver "approaching such intersection from the right."

### The court's change in wording of charge after jury argument.

At close of evidence, the court then prepared his main charge, submitting same to counsel for objections and exceptions; instruction 7 reading as follows: "By the term 'immediate hazard' is meant that the Walls' automobile *was* in such proximity to the intersection that the speed and nearness thereof was such that a reasonably prudent person, situated as was J. M. Drake, should have known that an attempt to proceed into the intersection ahead of the Walls' car could not by the exercise of ordinary care then be made with safety." (Emphasis ours.) Appellant's objections thereto were in greater part that such instruction "has the effect of instructing the jury that the defendant should have known that an attempt to proceed into the intersection before the Walls' car reached the intersection could not be made in safety;" and because the instruction as worded "is reasonably calculated to lead the jury to believe that the presiding judge of this court is of the opinion that the defendant was in the wrong and entered the intersection when by the exercise of ordinary care he should not have done so and that the defendant entered the intersection when he knew it was dangerous to do so; and (d) because said Special Instruction No. 7 constitutes a comment by the court on the weight of the evidence."

Defendant's above objections to instruction 7 being overruled, the court's main charge was read to the jury in its original form (inclusive of instruction 7 as above shown); both sides then making their arguments to the jury, at conclusion of which the jury were given a recess. During such recess and before the main charge was delivered to the jury, and outside of their presence and hearing the court changed the language of instruction 7 by deleting the word "was" in the second line thereof and inserting in its place the words "would have to be", so that after such alteration said special instruction read as follows: "By the term 'immediate hazard' is meant that the Walls' automobile *would have to be* in such close proximity, etc." (Emphasis ours.) Further recitals of Bill of Exception No. 1 are shown in footnote.*

* (Bill of Exception No. 1 in part).

"At the time of making such change in Special Instruction No. 7, the following colloquy took place between the presiding judge and counsel for defendant, outside the presence and hearing of the jury, including the defendant's objections to the alteration so made by the presiding judge in Special Instruction No. 7.

"The Court: While the jury is out and before they retire, I have spoken to counsel on both sides with reference to instruction number seven on page two of—or three of the charge. Its the court's opinion that the word 'was' in the second line should be taken out and instead of the word 'was', should be inserted 'would have to be'; and the Court at this time is inclined to do that; makes that explanation a little clearer in its meaning to the jury and perhaps keep it from being on the weight of the testimony, if it could be. Do you want to object to that? "Mr. Bateman: Yes, Your Honor, I object to the Court changing the instruction that Your Honor mentioned at this late date after all of the charge, including the faulty instruction, had been read by the Court to the jury and after the arguments of counsel and particular in view of the fact that counsel for plaintiff in their arguments made much of the wording of the instruction as originally appeared in the charge and made such arguments as were reasonably calculated to deliberately lead the jury to believe that the Court was telling them that Mrs. Walls' car was in such proximity to the intersection, that the speed and nearness thereof was such that a reasonably prudent person situated as was J. M. Drake should have known that an attempt to proceed into the intersection ahead of the Walls' car could not by the exercise of ordinary care then be made with safety. In this connection I call the Court's attention to the

It can hardly be contended that Instruction No. 7 was not on weight of the evidence, as originally given; appellant having distinctly pointed out such defect prior to reading of charge to the jury. They were thereby told that the Walls' automobile *was* in such proximity to the intersection that a reasonably prudent man situated as was Mr. Drake should have known that an attempt to proceed into the intersection ahead of the Walls' car could not in the exercise of ordinary care be made in safety. The charge in its entirety was then read to the jury, and it was not until after argument by both sides to the jury that the correction was made, the court stating that he did not intend to read the corrected charge to that body.

■ The proceedings reflected in said Bill of Exception constituted, in our opinion, the giving of an additional instruction which the court is fully authorized to do on its own motion (Rule 286), but that no such instruction shall be given "except in conformity with the rules relating to the charge." A compliance with these rules would have contemplated, we think, a formal withdrawal of the erroneous instruction and substitution of the corrected one, reading same to the jury with direction to disregard the withdrawn instruction for any purpose and to look for the law of the case to the main charge as theretofore given inclusive of the corrected instruction as read to them; respective counsel being entitled to additional argument on the point, if desired. The matter of immediate hazard, being a vital issue between the parties, it was only by following above procedure that the vice contained therein and as originally read to the jury could have been eliminated from the charge. In Cheek v. W. H. Nicholson & Co., Tex.Civ.App., 146 S.W. 594, a defendant's special instruction was read to the jury in connection with the main charge and the jury retired to consider their verdict. At request of defendant, the jury was recalled and the special charge withdrawn; the court then instructing the jury not to consider the same but they would take the law of the case from the main charge alone. This was held to be within the court's province and proper procedure.

fact that we pointed out the error in the instruction in the question yesterday when the Court gave us the usual opportunity to make our objections and exceptions to the charge. Those exceptions and objections were made in the presence not only of Your Honor, but also of counsel for the defendant, and the objections were overruled.

"We now submit that having submitted those instructions to the jury and permitting counsel for plaintiff to argue on them, it would now be grossly unfair and prejudicial to the defendant's right for the change to be made in the instruction that Your Honor has suggested, and we object to it seriously.

"The Court: All right. The objection is overruled and the change is made, so it will read by the term immediate hazard is meant that the Walls' automobile would have to be in such proximity to the intersection, etc.

"Mr. Bateman: Well, now Your Honor, I want to make the further objection and exception that for the Court to now call the jury out and give them the instruction as it has now been—

"The Court: I don't intend to read it to them.

"Mr. Bateman: —altered by the Court would merely emphasize and further prejudice the rights of the defendants.

"Mr. Hill: You are objecting.

"The Court: I don't intend to read it to them. Just make the correction is all."

"After counsel for defendant was then given an opportunity to make his formal objections and exceptions to the charge as thus altered, the charge was manually delivered to the jury, and the said alteration in Special Instruction No. 7 was not otherwise called to the attention of the jury. Defendant excepts to the action of the Court in altering the language of Special Instruction No. 7 after it had been read to the jury in its original form and the jury arguments had been presented, and to the action of the court in overruling defendant's objections thereto, and tenders this bill of exceptions and asks that it be filed and signed as part of the record in this cause."

Appellant makes no point of the manner in which instruction 7 was thus altered as reflected in Bill of Exceptions, but we have included in this opinion the circumstances thereof on our own motion; bearing as it does on a most delicate phase of the judicial function—that of giving additional instructions after jury argument. To the reply of appellees that the original wording of instruction 7 became immaterial, since it was corrected and amended, appellant's reply is this: "We are complaining because the trial judge sat upon the bench and read an instruction to the jury which in effect told them that the evidence showed that the appellees' automobile was so close to the intersection as to constitute an 'immediate hazard', and that if appellant had acted as an ordinary prudent person, he would have yielded the right-of-way to Mrs. Walls. The language of Special Instruction 7, in its original form, was actually read out loud to the jury, and at no time did the trial judge tell the jury anything different in that respect, unless it can be said that by changing the word 'was' to the words 'would have to be' had that effect; but, as shown by the record, this amendment was never specifically called to the jury's attention by the trial judge or anyone else. If the trial judge had made a similar statement during the course of the trial, as for instance in a colloquy between the court and counsel, but in the presence and hearing of the jury, clearly his statement would have been a comment on the weight of the evidence and, unless the jury were instructed not to consider it, would present reversible error, even though in the charge the court subsequently gave a correct instruction on right of way." Such change or alteration not being made "until after the charge had been read to the jury in its original form, and after the argument of counsel, and never was read to the jury." (In this connection, from the Bill of Exceptions, defense counsel appears in the attitude of having waived a reading of the altered instruction to the jury.)

Appellant further argues under points 15, 16, 17 and 18 that instruction 7 as read to the jury had the effect of tainting the entire charge in that laymen as jurors would understand these instructions to mean that the trial court was of the opinion (1) that the law required the defendant to stop at the stop sign and yield to other traffic on Elm Street; (2) that when defendant reached the intersection, Mrs. Walls' car was so close that he owed the duty to yield right-of-way to her; and (3) that what the defendant did was not done in the exercise of ordinary care but was negligent. In short, that "the trial court was of the opinion that the plaintiffs were in the right and the defendant in the wrong * * * and must have felt impelled to answer the special issues carefully in such way as to assure plaintiffs of a judgment."

■ Erroneous instructions 6 and 7 (as originally given) relate to right-of-way and immediate hazard, and we have eliminated issues 3 and 20 and answers, involving those factors from any consideration as in support of this plaintiffs' judgment. But were all of the remaining findings adverse to appellant, similarly affected? We think not. "Objectionable instructions do not give ground for prejudicial error if the jury's findings uninfluenced by them are adverse to the party complaining of them. * * * In fact, the question whether the error in the instruction given was harmless must be determined from an examination of the entire record, and unless the court is satisfied from such an examination that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment, a reversal should not be granted." 4 Tex.Jur.2d p. 603. Another vital fact issue in the case was defendant's duty to keep a proper lookout (Issue 1) and from plaintiffs' Exhibits 11 and 13 alone, the jury had independent factual basis for their conclusion that there was some intermediate point from which appellant would safely have obtained a clear view to his left without entering the inter-

section in question. On basis of the foregoing rule, therefore, the points under discussion are overruled.

■ By point 21, error is assigned in permitting plaintiffs' witness Dr. Goodfried to testify concerning his interpretation of x-rays made by Dr. McKellar and which were not in evidence, over defendant's objection that the x-rays would be the best evidence of what they showed. After Dr. Goodfried, of Dallas, testified and had been excused, exhibit 20 (x-rays) were later introduced in evidence and proven up as those from which Dr. Goodfried had testified but not as the McKellar x-rays. In this instance the objection should have been sustained. X-ray films constitute evidence of their contents, subject to interpretation by a skilled witness; opposing counsel being entitled to cross-examine the witness with opportunity to test his memory and skill with the x-rays themselves before the jury. The point seems not to have been directly passed upon by Texas Courts, but see Jolman v. Alberts, 192 Mich. 25, 158 N.W. 170, 173, 77 A.L.R. 954, holding on the subject that "there could be no proper cross-examination of an expert interpreter in the absence of the thing interpreted." Also see Marion v. B. G. Coon Construction Company, 216 N.Y. 178, 110 N.E. 444, to the same effect.

■ However, it clearly appears from the record that the diagnosis of Dr. Goodfried from the Dr. McKellar's films was only cumulative at most. Evidence of injuries to Mrs. Walls had been established by other witnesses; Dr. Goodfried had made his own x-rays of the same portions of the anatomy of this plaintiff (introduced in evidence) giving testimony from them substantially as that covered in his interpretation of the Dr. McKellar films. He had treated Mrs. Walls for sometime, making a physical examination from which he arrived at his own diagnosis of her injuries. Error incident to the testimony in question would therefore be rendered harmless under the principle of law stated in 4 Tex.

Jur.2d § 941, pp. 574, 575 that: "Error in admitting particular evidence is generally regarded as harmless where the matters sought to be proved by such evidence are supported by other cumulative evidence that is properly admitted in the case, or that is admitted without objection, or that is supported by admissions or evidence of the same character or to the same effect adduced or elicited on behalf of the complaining party."

We have given the record careful study, the underlying factual situation being evenly balanced; sufficiently so as to have well supported a verdict either way. To the charge of undue sympathy on behalf of plaintiffs we note that on plaintiffs' claim of $189.54 for damages to their car, the jury has awarded only $100; and excessiveness of verdict is not claimed.

All points of error are accordingly overruled and judgment of the trial court is affirmed.