**COMMUNITY CHAPEL FUNERAL HOME**
**et al., Appellants,**

v.

**Joe L. ALLEN et ux., Appellees.**

**No. 7471.**

Court of Civil Appeals of Texas,
Beaumont.

Aug. 23, 1973.

Rehearing Denied Sept. 13, 1973.

F. Warren Hicks, Houston, for appellants.

Michael A. Moriarty, c/o Helm, Jones & Pletcher, Houston, for appellees.

DIES, Chief Justice.

This is a suit for personal injuries resulting from an automobile collision. Plaintiffs below are Joe L. Allen and wife, Flossie Mae. Each plaintiff alleged injuries and damages. Defendants below are Community Chapel Funeral Home and John Rodgers, the driver of its ambulance. Following a jury trial, judgment was given in favor of both plaintiffs, from which defendants appeal.

Appellants' first cluster of points of error complain of the court's allowing Dr. Antonetti's testimony concerning X-rays of both plaintiffs. Among these points is the contention that the X-rays should have been introduced in evidence.

Dr. Antonetti referred plaintiffs to a Dr. Jackson for X-rays, received his findings, and based his conclusions on these X-rays to a large extent. Neither the films nor Dr. Jackson appeared in court. However, Dr. Antonetti testified that he examined the X-rays with Dr. Jackson and he agreed with Dr. Jackson's interpretations.

Dr. Antonetti first examined Mr. and Mrs. Allen on April 11, 1969. Mrs. Allen's chief complaint was related to pain in the neck, head, back and stomach. X-rays were ordered which showed some changes in the spine. They showed "[c]ervical dorsal scoliosis convexity to the right, slight straightening of the lordotic curvature and minimum sublaxation of the process of the right lateral C–1." These are objective findings of "something going on in the spine." He further testified that the

lumbar X-rays showed rotoscoliosis and arthritis which, based on the history he took, was incited or aggravated by trauma. Dr. Antonetti's medical opinion was that she has "a chronic arthritis mainly of the cervical spine." It was his opinion that the accident of April 8, 1969 was the inciting trauma of her arthritic problems.

As to Mr. Allen, the complaints were of the back and neck. X-rays of his cervical and lumbar spine were taken and showed "multiple projections, and there is scoliosis, changes in the curvature of his spine." Dr. Antonetti found increases in bone density in the third, fourth, fifth, sixth and seventh cervical body and indirect arthritic changes. The X-ray of the lumbar spine showed definite changes—chronic changes in the sacroiliac joint and anterior posterior wedging of the body of the first and second lumbar vertebrae—which in his opinion were aggravated by the accident.

We have summarized at some length Dr. Antonetti's findings to show that they are largely—even entirely—based on the X-rays in question. In this case we do not have a situation where a physician's opinion is independently based on his findings and only confirmed by X-rays. We think it is fair to say that without these X-rays, Dr. Antonetti's testimony of findings, causation, and prognosis could not have been given. Manifestly, if it was improper to permit the doctor to interpret films not in court, then the error would be harmful.

The Texas cases concerning whether an X-ray may be interpreted without its physical presence in court are divided. Some have permitted it and some have not, usually on the ground that the X-ray was the best evidence of what it revealed. It would do little for this opinion or the jurisprudence of the state to review these cases. We do, however, enumerate most of them in a footnote.*

■ While we are unable to say that an X-ray is the best evidence of what it reveals—since ordinarily it requires an expert to interpret one—nevertheless, where possible, we believe fairness requires its presence in court during interpretation. This gives the opposing side and other specialists—and at times even the jury—opportunity to scrutinize the testimony. A contrary rule, we think, could lead to much abuse.

■ It should offer little burden on the party relying on the X-ray interpretation to produce it. It is not necessary that the technician who took it be present if a competent witness can identify the X-ray and make proof that it is a correct portrayal of the injuries. See Travelers Insurance Company v. Williams, 355 S.W.2d 728 (Tex.Civ.App., Beaumont, 1962, error ref. n.r.e.) and Texas Indemnity Ins. Co. v. Phillips, 153 S.W.2d 503, 505 (Tex.Civ. App., Galveston, 1941, dism.).

Indeed, our Supreme Court has held that the jury may take X-rays with them in retirement. Texas Employers' Ins. Ass'n v. Crow, 148 Tex. 113, 221 S.W.2d 235, 236 (1949).

■ Since it is our view that this case must be remanded for a new trial, we do not find it necessary to pass upon the other points.

The judgment of the trial court is in all things reversed and remanded.

---

* Maryland Casualty Co. v. Dicken, 80 S.W. 2d 800, 804 (Tex.Civ.App., Dallas, 1935, dism.) ; American Nat. Ins. Co. v. Points, 81 S.W.2d 762, 766 (Tex.Civ.App., El Paso, 1935, dism.) ; Federal Underwriters Exchange v. Ener, 126 S.W.2d 769, 773 (Tex.Civ.App., Beaumont, 1939, dism. judgm. corr.) ; Federal Underwriters Exchange v. Rigsby, 130 S.W.2d 1105, 1107 (Tex.Civ.App., Beaumont, 1939, dism. judgm. corr.) ; Traders & General Ins. Co. v. Collins, 179 S.W.2d 525, 528 (Tex.

Civ.App., Galveston, 1944, ref. w. o. m.) ; Texas Employers Ins. Ass'n v. Reid, 209 S.W. 2d 1016, 1022 (Tex.Civ.App., El Paso, 1947, no writ) ; Cantu v. Casas, 265 S.W.2d 175, 176 (Tex.Civ.App., San Antonio, 1953, error ref. n. r. e.) ; Kollmorgan v. Scott, 447 S.W.2d 236, 238 (Tex.Civ.App., Houston-14th, 1969, no writ). See also McCormick & Ray, 2 Texas Law of Evidence (2d ed.) § 1561 (1956) and 32A C.J.S. Evidence § 792 (7) (1964) and authorities cited in each.