Lorenzo Q. AVILA, Appellant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.

No. 15696.

Court of Civil Appeals of Texas, San Antonio, Texas.

April 20, 1977.

Rehearing Denied June 8, 1977.

**454**

Jerald Abrams, Knickerbocker, Abrams & Cowan, Eagle Pass, for appellant.

C. G. House, House, Mercer, House, Brock & Wilson, San Antonio, for appellee.

KLINGEMAN, Justice.

This is a workmen's compensation case arising out of an injury sustained by appellant, Lorenzo Q. Avila, on March 13, 1974 in the course and scope of his employment with his employer, who carried workmen's compensation insurance with appellee, United States Fidelity and Guaranty Company. The parties will be herein referred to as they were in the trial court. The parties stipulated that the only issues in conflict were those of producing cause and extent and duration of plaintiff's disability. The jury found that the injury on March 13, 1974 was a producing cause of total incapacity; that the beginning date of such total incapacity was March 13, 1974; and that such total incapacity ended on November 13, 1974. Judgment was entered for plaintiff in the amount of $1,665.75 as accrued compensation and interest, and further awarding him certain stipulated to medical expenses.

Plaintiff asserts nine points of error which can be divided into three general areas: (1) Points of error complaining of error of the trial court in admitting into evidence certain testimony of Dr. Newsom Stool pertaining to certain X-rays taken in 1973 which were not introduced into evidence. (2) Points of error complaining that the trial court erred in admitting into evidence a letter dated April 7, 1975 (Defendant's Exhibit No. 16) from Dr. John Langston to the Texas Rehabilitation Commission, and admitting certain other testimony of Dr. John Langston. (3) One point of error asserting that the costs of placing a written deposition in the transcript should be taxed against defendant.

We see no point in setting forth in great detail the voluminous testimony. Plaintiff sued for and asserts that he is entitled to total and permanent disability benefits and, alternatively, for maximum partial disability benefits. Defendant, in addition to the usual defenses, also plead that the disability had been caused by prior or subsequent accident or by disease or diseases which are not connected with the accident involved.

A number of medical and lay witnesses testified as to the extent and duration of plaintiff's injuries and disability.

By his first six points of error, plaintiff asserts that the trial court erred in admitting into evidence Dr. Stool's deposition tes-

timony as to his observations and conclusions based on X-rays allegedly taken of plaintiff in 1973, for the reason that: (1) such X-rays were never produced or admitted into evidence; (2) such X-rays were not available for inspection and cross examination by plaintiff or his counsel either at the time of taking the deposition or at the time of the trial; (3) such X-rays were never properly proven up.

Dr. Newsom Stool is an orthopedic surgeon. He first saw plaintiff in May of 1974, approximately two months after the injury, on a referral from one of plaintiff's doctors. Dr. Stool testified that at such time X-rays were available, which were either carried to him by plaintiff or mailed to him. Plaintiff testified that when he first visited Dr. Stool he carried some X-rays with him, and that when he returned to Del Rio he brought such X-rays with him and returned them to the Memorial Hospital in Del Rio.

Dr. Stool testified that he reviewed X-rays made in Del Rio both before and after the accident. Plaintiff's attorney objected to any evidence concerning such X-rays since the X-rays were not available. The trial court allowed the testimony subject to being connected by showing of unavailability and due diligence. Although it is somewhat indefinite as to how many X-rays were involved, it would appear from a review of the entire record that none of the X-rays examined by Dr. Stool at this visit were ever introduced into evidence. He testified that he had made a comparison of the 1973 X-rays with some that were made after the accident,[1] but that such comparison was somewhat limited because the 1973 X-rays were front views and did not cover all of the area covered in the latter X-rays. He testified as to his findings on such examination in which he found some evidence of an injury but also some spurring, and that he didn't really find much wrong on the May 7 date; that he found some degenerative changes in X-rays taken. He also

testified that a ruptured disc causes back pain with numbness and limping; that a ruptured disc would not be visible on the X-rays; and that more tests would have to be done on plaintiff to determine whether he had a ruptured or herniated disc.

Dr. Joe Sanders, a radiologist at the Val Verde Memorial Hospital, testified that plaintiff was in the hospital in 1973 because of a kidney stone and some X-rays were taken at such time; that a search had been made for these X-rays but that they could not be found; and that also the X-rays made in the hospital in April 1974 and July 1974 could not be found.

Plaintiff asserts that the admission of the testimony of Dr. Stool was harmful error because: (1) the X-rays were not admitted into evidence; (2) they were not available for inspection and cross examination either in the court or at the time of taking the deposition; (3) there was no proper foundation for such testimony because of the absence of testimony showing (a) the name and identity of the person who took the X-rays; (b) that such X-rays were taken by a person competent to make them; (c) that they were in fact X-rays of the plaintiff; (d) that such X-rays correctly portrayed the area of the body which they purported to represent; (e) that they were made in the regular course of business.

There are numerous cases and authorities discussing the allowing of testimony as to X-rays which are not in evidence. In 3 Wigmore on Evidence § 795 at 246 (1970), it is stated:

> In view of this importance of interpretation, a witness who testifies orally to knowledge obtained by studying an X-ray photograph must be prepared to *produce the photograph-print . . . for cross-examination to the grounds of his interpretation.*

In *Community Chapel Funeral Home v. Allen,* 499 S.W.2d 215 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.), the court said:

---

1. Some of the X-rays made after the accident were also not produced or introduced into evidence.

The Texas cases concerning whether an X-ray may be interpreted without its physical presence in court are divided. Some have permitted it and some have not, usually on the ground that the X-ray was the best evidence of what it revealed.

. . .

While we are unable to say that an X-ray is the best evidence of what it reveals—since ordinarily it requires an expert to interpret one—nevertheless, where possible, we believe fairness requires its presence in court during interpretation. This gives the opposing side and other specialists—and at times even the jury—opportunity to scrutinize the testimony. A contrary rule, we think, could lead to much abuse.

In *Drake v. Walls,* 348 S.W.2d 62 (Tex. Civ.App.—Dallas 1961, writ ref'd n. r. e.), one point of error was that the court erred in permitting a witness for plaintiff, Dr. Goodfried, to testify as to his interpretation of X-rays made by another doctor where the X-rays were not in evidence. The court stated that the objections to his testimony should have been sustained and that X-rays constitute evidence of the contents, subject to interpretation by a skilled witness; opposing counsel being entitled to cross examine the witness with opportunity to test his memories and skills with the X-rays themselves before the jury. *See also Texas Employers' Ins. Ass'n v. Crow,* 218 S.W.2d 230 (Tex.Civ.App.—Eastland), *aff'd,* 148 Tex. 113, 221 S.W.2d 235 (1949); *Texas Indemnity Ins. Co. v. Phillips,* 153 S.W.2d 503 (Tex. Civ.App.—Galveston 1941, writ dism'd).[2]

Plaintiff also asserts that the testimony of Dr. Stool as to the X-rays involved was improperly admitted because there is total absence of evidence showing: (1) the name or identity of the person who took such X-rays; (2) that said X-rays were taken by a person competent to take them; (3) that the X-rays were in fact X-rays of plaintiff; (4) that the X-rays correctly portrayed the area of the body which they purported to represent; (5) how such X-rays were made; (6) that they were taken in the usual course of business by the person taking them.

In *Hartman v. Maryland Casualty Co.,* 417 S.W.2d 640 (Tex.Civ.App.—Waco 1967, no writ), the plaintiff appealed in a workmen's compensation case from a judgment which limited her to seven weeks of incapacity. A crucial element of the insurance company's defense was that plaintiff had suffered a prior injury which caused much of her present incapacity. The insurance company introduced X-rays taken both in 1962 and 1965 (before and after the claimed injury). The purpose of such X-rays was to show that plaintiff's condition in 1965 was the same as in 1962. The 1962 X-rays were not properly proven up. The court stated there was no evidence as to who made the X-rays, how they were made, or whether they correctly portrayed what they purported to represent. The court held that it was harmful error to allow the 1962 X-rays.

In *Texas Indemnity Insurance Co. v. Phillips, supra,* the court said:

It is the established rule in this state that X-ray photographs of an injured person are not admissible in evidence without proof or admission by the parties that they are in fact X-ray photographs of the body of the injured person and that they are correct portrayals of his injuries [citing cases], and that, in the absence of such proof, the photographs and the testimony interpreting them, are immaterial and irrelevant, and therefore incompetent and are without vitality and can furnish no basis for a judgment.

In *Cantu v. Casas,* 265 S.W.2d 175 (Tex. Civ.App.—San Antonio 1953, writ ref'd n. r. e.), a doctor for plaintiff testified on the basis of X-ray photographs which were not introduced into evidence. The court held that it was prejudicial error to allow the testimony, stressing that the testimony interpreting the X-rays would be incompetent without evidence showing that the X-rays themselves are competent.

**2.** But *see Kollmorgan v. Scott,* 447 S.W.2d 236 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ); *Maryland Casualty Co. v. Dicken,* 80 S.W.2d 800 (Tex.Civ.App.—Dallas 1935, writ dism'd).

■ We have concluded that the trial court erred in admitting into evidence, over objections, the testimony of Dr. Stool pertaining to X-rays which were never admitted into evidence, for the following reasons: (1) plaintiff or his attorney had no opportunity to properly cross examine the witness because of the absence of such X-rays; (2) the X-rays were not sufficiently proved up in that there is (a) no positive evidence as to who made the X-rays; (b) that they were taken by a qualified technician or doctor; (c) that they correctly portrayed what they purported to represent; (d) that such X-rays actually portrayed the portion of the body where the injury was involved.

■ We next consider plaintiff's contention that the trial court erred in admitting into evidence a letter of Dr. John Langston to the Texas Rehabilitation Commission which was admitted over objection. The contents of such letter may be summarized as follows: (1) that his examination and examination of X-rays indicate very little injury and some small disability; (2) that there appears to be an old compression injury to a part of the spinal area; (3) that his impression from such examination and X-rays is that there is a well healed fracture of L2, and degenerative disc disease of the lumbar spine; (4) that the patient should return to work; (5) that he believes that the most important thing to get him going back to work would be the settlement of his lawsuit.

A pertinent portion of the regulation here involved, 45 C.F.R. § 1361.47; 40 F.R. 54710 § 1361.47, is as follows:

(1) All information as to personal facts given or made available to the State agency, its representatives, or its employees, in the course of the administration of the vocational rehabilitation program, including lists of names and addresses and records of agency evaluation, shall be held to be confidential.

(2) The use of such information and records shall be limited to purposes directly connected with the administration of the vocational rehabilitation program.

(3) Information shall not be disclosed directly or indirectly, other than in the administration of the vocational rehabilitation program, unless the informed consent of the client has been obtained in writing.[3]

We have found no cases involving an interpretation of this particular provision of the rehabilitation program or the provision of the Texas Education Code, but a case involving a somewhat similar provision of another such agency is the case of *Texas Employers' Ins. Ass'n v. Marshall,* 436 S.W.2d 617 (Tex.Civ.App.—Eastland 1969, writ ref'd n. r. e.). This was a workmen's compensation case where a doctor had examined Marshall, the injured employee, at the request of the Social Security Administration which was to pass on Marshall's claim for financial aid. The doctor had made a written report to the agency. The Federal statutes and regulations involved were basically similar to the vocational rehabilitation statutes and regulations here involved, and provide that there shall be no disclosure of any information obtained by persons in the course of discharging duties of the Social Security Administration. The court said:

The statute and regulation prohibit any doctor who has performed a medical examination for the Social Security Administration from disclosing the information thus obtained. The information the doctor obtained by his examination of Marshall for the Social Security Administration in passing upon Marshall's application for benefits is privileged.

It is defendant's contention that even if the information was privileged or prohibited from disclosure, plaintiff here waived

---

**3.** Tex.Educ.Code Ann. § 30.47 (1971). "It shall be unlawful, except for purposes directly connected with the administration of the rehabilitation program and in accordance with regulations, for any person or persons to solicit, disclose, receive, or make use of, or authorize, knowingly permit, participate in, or acquiesce in the use of any list of, or names of, or any information concerning, persons applying for or receiving rehabilitation, directly or indirectly derived from the records."

such privilege in submitting cross interrogation to Dr. Langston. One of the interrogatories submitted to plaintiff by defendant inquired of plaintiff the names and addresses of all physicians, surgeons, etc., who had examined him, and he listed Dr. Langston. Thereafter defendant took written interrogatories from Dr. Langston and plaintiff's attorney submitted cross interrogatories. Defendant argues that by so doing plaintiff waived his alleged privilege.

The only case cited by defendant in support of such contention is *Jones v. State,* 159 Tex.Crim.R. 18, 261 S.W.2d 324, *cert. denied,* 346 U.S. 859, 74 S.Ct. 75, 98 L.Ed. 372 (1953), involving the prosecution of a defendant for refusing to support his minor children. An employee of the Department of Public Welfare testified that she had investigated the matter and had provided assistance in connection with her official duties. The Public Welfare Act provided that it was unlawful to disclose information concerning persons receiving assistance under various assistance programs. The court said:

> We do not construe the statute mentioned as prohibiting an employee of the Department of Public Welfare from testifying as to what the witness may have observed as to the condition of children for whom aid is sought or extended by the department, nor testimony as to any report that such employee-witness may have made to the accused concerning the children's needy circumstances. We think the act does prohibit testimony as to any report such employee may have made to the department, and any action taken on such report.

We do not regard such case as helpful to defendant's position. The case was a criminal case involving an accused in a prosecution for nonsupport of his children. The children were the beneficiaries of such assistance provided by the Welfare Department. Such provision was not designed to protect persons who do not support their children. Further, the court held that the Act does prohibit testimony as to any report such employee made to the Department.

In the case before us, the letter involved is a report made to the Texas Rehabilitation Commission by the doctor who was directed to make an examination in connection with a claim for rehabilitation aid. The claimant was directed by the agency to go to such doctor for an examination.

There is a sound administrative, governmental, and social purpose that applicants for rehabilitation or certain other types of benefits be examined by a doctor selected by the administrative agency, and a full disclosure can best be obtained by an assurance that such information will be kept secret. It is clear from the language of this section of the Rehabilitation Act that the intent was that this type of record and information shall be held confidential and not subject to disclosure. The provision is couched in mandatory language. The regulation plainly provides that such information shall not be disclosed, directly or indirectly, unless the informed consent of the *client shall have been obtained in writing.* There is nothing in the record to show that this was done.

We have concluded that under the provisions of the regulations and the applicable statutes the court erred in admitting into evidence Dr. Langston's letter to the Texas Rehabilitation Commission.

■ Defendant asserts that if any error was committed, it was harmless error. Rule 434 Tex.R.Civ.P. We disagree. A crucial element of the insurance company's defense was that the plaintiff was suffering from a condition which existed at the time of the injury which caused much of his present incapacity. A material part of defendant's testimony in this connection was dependent upon an interpretation of X-rays taken before the accident which were never introduced into evidence. In all probability, the verdict of the jury as to the extent and duration of the injury and disability was materially influenced by this testimony. In our opinion, the admission of such testimony was highly prejudicial. Such error was further compounded by the admission into evidence of Dr. Langston's letter in which he states among other things, "I believe the

most important thing to get him going back to work would be the settlement of his lawsuit." This evidence was both inflammatory and prejudicial.

We have concluded the erroneous admission of the evidence hereinbefore discussed was harmful error and that this case must be reversed and remanded.

By one point of error, plaintiff asserts that in case of affirmance by this court of the judgment of the trial court, defendant should be taxed for the costs of including the deposition in the record, which he asserts has been improperly placed therein. In view of our decision herein reversing and remanding this case, we do not consider this point.

The judgment of the trial court is reversed and remanded to the trial court for a new trial.

BARROW, Chief Justice, concurring.

I concur that the letter of Dr. Langston to the Texas Rehabilitation Commission was improperly admitted. We do not have before us at this time the question of whether or not Dr. Langston could testify as to the result of his physical examination of plaintiff.