**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**UNITED TRANSPORTS, INC., et al., Appellees.**

**No. 16410.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 23, 1975.

Rehearing Denied Feb. 20, 1975.

Gordon A. Holloway, Harman Parrott, Houston (Sewell, Junell & Riggs, Houston, of counsel), for appellant.

H. L. Morgan, Carl Dudensing, Houston (Morgan, Dudensing & Tullis, Houston, of counsel), for appellee Billy Raymond Womack.

Butler, Binion, Rice, Cook & Knapp, Michael O. Connally, Houston, for appellees United Transports, Inc. and Transport Ins. Co.

COLEMAN, Chief Justice.

This is a personal injury suit. The plaintiff, Billy R. Womack, sued the defendant, Missouri Pacific Railroad Company, for injuries sustained as the result of a collision between an auto transport truck operated by plaintiff and defendant's train. The trial was to a jury. Based on the jury findings the trial court entered a judgment for the plaintiff in the amount of $535,866.44.

The defendant's principal contention on this appeal is that it owed no duty to plaintiff to warn of the presence of the train on the crossing.

On January 21, 1967 at about 3:00 o'clock a. m., plaintiff was traveling out of Houston toward Sugarland on U. S. Highway 59. It was a foggy night, and plaintiff testified that he slowed his speed so as to drive within his headlights. The fog was so dense that plaintiff was forced to use his windshield wipers, and the highway was wet.

Plaintiff was familiar with the route he was traveling and was aware that there was a protected railroad crossing ahead. He testified that he knew that when the crossing was occupied by a train a red blinking light would be flashing. There was a sharp conflict in the testimony as to whether or not the light was operating on this occasion. The jury found that it was not operating, and this finding is not attacked on the appeal.

When plaintiff was about 100 feet from the crossing he realized that a train was across the highway. He testified that he panicked, applied his brakes and swerved to the right. The auto transport which he was driving was fully loaded and weighed about 35,000 pounds and was about 65 feet long. He collided with the train and was seriously injured. The treatment of his injuries required extensive hospitalization and plastic surgery. He suffered permanent disability.

The jury found that the train crew operated the train across the north half of Highway 59 at a time when the railroad signal light facing the plaintiff was not flashing and that such operation of the train was negligence and a proximate cause of the collision. The jury failed to find the plaintiff guilty of any acts of negligence.

The defendant relies on the settled rule that the presence of a railway car on a crossing is ordinarily a sufficient warning of the danger to be encountered at the crossing, even at night when conditions make visibility poor. Texas City Terminal

Railway Co. v. Blaha, 502 S.W.2d 20+ (Tex.Civ.App.—Houston 1973, no writ hist.).

For several miles as the plaintiff approached the point where the highway intersected the railroad track the road was straight and level. The fog was extremely heavy, and it was necessary to operate the windshield wipers. The highway was asphalt and was wet. The truck was being operated with its lights on low beam because the visibility was better than when the lights were on high beam in the fog. One witness estimated that he could see the white line on the highway about 30 feet away. Plaintiff knew that the crossing was protected by flashing red lights when a train was being operated across the highway. The plaintiff estimated that in a heavy fog he could see the flashing red light from a distance of half a mile. Plaintiff testified that the flashing lights were not working as he approached the railroad crossing and that this led him to believe that the crossing was clear. He testified that because of the density of the fog he had slowed down to about 25 miles per hour. He was traveling on the right-hand side of the roadway when he first saw the train about 100 feet ahead. He immediately applied his brakes, and he thinks he pulled to the right. The truck hit a boxcar and he was severely injured.

Mr. Tilley, who was working as a brakeman on the train in question, testified that the train was required to, and did, stop before it entered the crossing in question. He got off the train and walked across the highway and performed a switching operation. This operation activated the flashing red signal lights in both directions for automobile traffic on the highway. He was in a position to see all four of these lights and felt sure that he did see all four of them. He was positive that he saw one of the lights which faced traffic coming from Houston. These lights were working properly and continued to work for the two hours the train was there at the crossing. He saw the truck as it approached the train, but he was not in a position to give any further warning. He testified:

"Before he hit the train I could see the truck. First I could see his headlights, of course, and also I could see him, not clearly but I could see it was a truck."

The testimony was such that the jury reasonably could have believed that the lights could have been seen on the night in question from a considerably greater distance than the train; that the train crew men were in a position where they could and should have seen whether or not the lights were working properly. From the evidence the jury might well have concluded that the train crew men operated the train across the crossing at a time when the signal lights were not flashing and that they knew or should have known that the lights were not flashing. The jury's conclusion that a person of ordinary prudence would not have occupied the crossing under these circumstances is supported by the evidence.

■ The plaintiff did not plead that the crossing was extrahazardous and did not request an issue on that point. We cannot imply a finding that the crossing was extrahazardous, because of the absence of such pleading.

■ It is only essential that the plaintiff obtain a finding of extrahazardous crossing where he seeks to impose upon the railroad a duty to take extraordinary means to give warning of such crossing such as flagmen, automatic signaling devices and crossing gates. Texas & N. O. Ry. Co. v. Hart, 163 Tex. 450, 356 S.W.2d 901 (1962), on remand 361 S.W.2d 237 (Tex.Civ.App.)

The case was tried on the theory that the defendant was guilty of ordinary negligence in moving the train over the crossing under the conditions then present. The plaintiff has not relied on the failure of the train crew to warn of the presence of the crossing.

In Texas Mexican R. Co. v. Bunn, 264 S.W.2d 518 (Tex.Civ.App.—San Antonio 1953, writ ref. n. r. e.), the court stated: ". . . the evidence supports the finding that flasher lights were not operating at the time of the collision, and that in view of this circumstance the failure of the engine crew to stop the engine was negligence, . . ."

There is evidence from which the court would have been justified in finding that the train crew prior to the time the train entered the crossing knew that the lights were not flashing. Two members of the crew testified that the lights were clearly visible and that they looked at them and saw that they were in operation. The jury did not accept their testimony that the lights were working properly. The trial judge could have concluded that since the lights would have been clearly visible had they been working properly the fact that they were not working must have been known to the crew. Such a finding will be presumed in support of the trial court's judgment. Under these circumstances the train crew should have realized that moving the train across the highway involved an unreasonable risk of harm to those people using the highway and that such motorists would not discover or realize the danger and would fail to protect themselves against it. The train crew men knew or should have known that the signal lights operated not only when the train approached the crossing but while it was upon the crossing. They knew or should have known that the unusually heavy fog had created a condition of poor visibility and that many motorists would depend upon the flashing lights to warn them that the track was occupied. It is undisputed that the train crew did nothing to warn approaching motorists that the track was occupied by the train. Comment f under Section 301 of the Restatement of the Law of Torts, 2d ed., Vol. 2, 1965, states:

". . . The actor may customarily adopt a method of giving warning which is in excess of that which a reasonable man would regard as necessary. By so doing, he may cause those likely to be affected by his act to rely upon the continuance of such warnings and to regard their absence as an assurance of safety. If the situation is such that the actor should realize that this is the case, he cannot discontinue this practice without exercising reasonable care to give warning thereof, although he thereafter does all that would otherwise be reasonably necessary. . . ."

In Texas & N. O. Ry. Co. v. Hart, 163 Tex. 450, 356 S.W.2d 901 (1962), the court said:

"We do not have here the question as to whether the failure of the warning devices to operate at an extrahazardous crossing constitutes negligence as a matter of law. . . . Our view is that it is the duty of the railroad to warn at such a crossing. It may give warning in a number of ways. Where it elects to warn by the use of an electric flashing light device, the burden is upon it to see that the device operates. Otherwise, at least as to the mechanical part of the device, it gives no warning.

". . . Assuming that the signal lights were not working, we think their unexplained failure to work raised an issue of negligence for the jury. See Annotation, 53 A.L.R. 973."

The annotation cited by the Supreme Court states:

"As a broad general rule it may be stated that, where a railroad company voluntarily or by statute maintains at a crossing a signaling device to give warning of the approach of a train or car, the failure of the device to operate in a particular instance constitutes negligence on the part of the railroad company."

In Louisville & N. R. Co. v. Mahoney, 294 S.W. 777 (Ky.1927), the court said:

". . . Possibly the light in the wig-wag signal was not intended to give light

to a traveler upon the highway so that he could see a train upon the track, but it was intended to give a warning signal to travelers on the highway that the crossing was then occupied by a train or was about to be occupied by a train then approaching, and to warn the approaching traveler of the danger of attempting to pass over the crossing, and a traveler upon the highway, who was acquainted with the fact that a wigwag signal bell and light was regularly maintained at that crossing, had a right to rely upon the efficiency of that signal to warn him of the approach of the train to the crossing and of the train upon the crossing, when he could not see and know of the presence of the train at or about the crossing. . ."

■ We hold that under the conditions present at the time of this accident there was a duty on the railroad to refrain from moving its train onto the highway crossing until it could give reasonable warning to approaching motorists of the danger created thereby. See Texas & N. O. Railroad Company v. Pettit, 290 S.W.2d 730 (Tex. Civ.App.—Beaumont 1956, writ ref'd n. r. e.); Erie R. Co. v. Stewart, 40 F.2d 855 (6th Cir. 1930, cert. denied 282 U.S. 843, 51 S.Ct. 34, 75 L.Ed. 748).

The trial court gave a general instruction on sudden emergency. The defendant contends that this was improper and reversible error because there were no pleadings to support such an instruction and because the evidence is both legally and factually insufficient to warrant such instruction. Defendant also contends that the trial court erred in allowing the plaintiff to amend his pleadings to allege sudden emergency after the jury verdict had been returned.

In his first amended original petition plaintiff alleged:

"When his truck was only a few feet from the railroad tracks, he discovered that there was a train on the tracks across the highway in front of him. He swerved his truck to avoid a collision . . ."

While these facts would clearly support a conclusion that at the time he discovered the train he was confronted with a sudden emergency, the plaintiff did not allege that the emergency was not proximately caused by negligence on his part, that it required immediate action without time for deliberation, or that after such emergency arose he acted as a person of ordinary prudence would have acted under the same or similar circumstances. We must assume, therefore, that plaintiff's pleading would not have been sufficient to require the submission of issues as was formerly the practice. Rule 277, Texas Rules of Civil Procedure, requires that on request of either party the court shall submit the cause upon special issues controlling the disposition of the case that are raised by the written pleadings and the evidence in the case, subject to the exception that the case may be submitted on a general charge under certain circumstances. While the present rule was adopted in 1973, the previous rule contained the same language. Pleading of sudden emergency, therefore, was required if a party desired the submission of issues to establish sudden emergency. In Yarborough v. Berner, 467 S.W.2d 188 (Tex. 1971), the Supreme Court held that the only real purpose of the sudden emergency issues is to make sure the jury is advised that sudden emergency may be present. It held that where under the evidence the theory of sudden emergency is present separate issues are not necessary, but suitable explanatory charges or definitions which fairly present the matter to the jury should be given. In Del Bosque v. Heitmann Bering-Cortes Co., 474 S.W.2d 450 (Tex. 1971), the Supreme Court held that when raised by the evidence an explanatory instruction should be given so that the jury will understand that conduct which in other circumstances would be unreasonable or imprudent is not so in emergency situations. We assume that in both of these cases the

doctrine of sudden emergency was properly pleaded.

We think, however, that it is no longer necessary to specially plead sudden emergency. Rule 277, supra, provides:

"In submitting the case, the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict and in such instances the charge shall not be subject to the objection that it is a general charge."

The standard by which the jury is to judge the conduct of one acting in an emergency situation has been established by the decisions of the courts. It is a matter of law. It is the duty of the trial judge to determine whether the doctrine of sudden emergency has been raised by the evidence admitted in the case. If he finds that there is evidence tending to establish the necessary elements of the doctrine, then it is his duty to submit such explanatory instructions as are proper to enable the jury to render a just verdict.

Rule 277, supra, also provides:

"The court shall not in its charge comment directly on the weight of the evidence . . ., but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence . . . where it is properly a part of an explanatory instruction or definition."

The trial court properly submitted issues on the negligence of the plaintiff. These were controlling issues. In order to properly answer these issues it was necessary under the evidence in this case that the trial court also submit the explanatory instruction on the doctrine of sudden emergency. Mobil Chemical Co. v. Bell, 517 S.W.2d 245 (Tex.).

After reviewing all of the evidence under the test mandated by In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), we conclude that the jury's finding that the plaintiff did not fail to keep a proper lookout is not so against the great weight and preponderance of the evidence as to be wrong and manifestly unjust. Neither can we find that the jury's answer to special issue number 6 that plaintiff was not negligent in his speed is against the great weight and preponderance of the evidence.

By points of error 19 through 26 the defendant contends that there is no evidence and insufficient evidence to support the jury's findings to special issue 8-c and d concerning lost wages in the past and future. Special issue number 8, the damage issues, was submitted generally. The jury was not required to list the amount of damages which they attributed as to each element of damage submitted to them. The issue included physical pain and suffering both in the past and in the future. The jury found that the sum of $500,000.00 would fairly and reasonably compensate the plaintiff for his injuries.

There is evidence that the plaintiff averaged $250.00 per week for the weeks he worked during the year immediately prior to the accident. During this year he did not work for about four weeks. There is evidence that two years after the accident he held a job for about two months making $80.00 a week, but had to quit because he could not do the work. Five years after the accident he is able to work and make about $350.00 a month. While the plaintiff might have been able to give more specific and accurate testimony as to his earnings prior to the accident, there is sufficient evidence to support a finding on lost earnings in the past and in the future. The evidence establishes that plaintiff received severe and permanent injuries and suffered intense pain as a result of the accident. The doctor estimated that the plaintiff's permanent disability for manual labor was 50%. This court cannot say that the jury's verdict was influenced by any improper considerations or was manifestly too large and excessive. Berne

v. Keith, 361 S.W.2d 592 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.).

■ The alternating red flashing lights erected by the railroad as a traffic warning contained lights facing east and also lights facing west. On a bill of exceptions the defendant asked an expert witness, who was familiar with the circuits controlling the lights, in effect, whether when the lights facing east were flashing the lights facing west would also be flashing. The trial court required them to qualify the question by including "if the automatic signal system was working properly" in the question. This action is assigned as error. While we think the original question was not subject to objection for the reason that the question merely asked for expert opinion, the error is not such as probably caused the rendition of an improper judgment.

■ The defendant attempted to impeach the witness, Garcia, offered by the plaintiff, by means of a prior statement taken by an agent of the defendant. Plaintiff offered other portions of the same statement for the purpose of completing it. This portion was on the same subject matter as that introduced by the defendant. The ruling of the trial court was not error. 7 Wigmore on Evidence, 3rd ed., § 2113 (1940).

A closer point, however, is presented by the defendant's complaint that the court erred in admitting a statement made by the witness Garcia to plaintiff's attorneys on January 26, 1967. This statement was taken five days after the accident. The plaintiff, apparently, introduced this statement in response to the action of the trial court in permitting the defendant to introduce a statement which they took in 1971. In support of their position that the trial court erred in permitting the introduction of the 1967 statement by plaintiff the defendant cites McCormick and Ray, Texas Law of Evidence, § 774, which reads:

"In civil cases the Supreme Court of Texas has taken the position that prior consistent statements may not be used to corroborate a witness who has been impeached only by evidence of prior inconsistent statements."

In the same section there is an exception to the following rule stated in these words:

"Where a witness has been discredited by evidence of facts . . . indicating bias, interest, or corrupt motives, he may be supported by a consistent statement made before such bias or motive existed."

In Garcia's statement of January 26, 1967 he stated that he saw a train-truck accident on January 21, 1967; that he was going south toward Sugarland, Texas in the curb lane or lane next to the shoulder of Highway 59. At the time he was traveling about 40 miles per hour and he saw a yellow truck in front of him loaded with cars traveling at about the same speed he was going, that is about 35 to 40 miles per hour. Just as he approached the railroad tracks near the sugar mill in Sugarland, Texas the truck was about 100 feet in front of him in the same lane traveling at about 35 miles an hour. He saw the truck hit the train and had not seen the train until the collision. This statement was entirely consistent with Mr. Garcia's testimony at the trial.

After the accident Mr. Garcia parked his automobile off the highway near the scene of the collision. While it was so parked a truck sideswiped the car, damaging a fender. Mr. Garcia was not in the car at the time but his wife was an occupant. During cross-examination the defendant asked Mr. Garcia whether he and his wife asserted a claim as the result of this collision against Duval, the owner of the truck, and Missouri Pacific Railroad Company. Garcia stated that he thought it was against Duval but he couldn't swear to it; he wasn't sure. He further testified that he

was never told by his attorney that a claim had been asserted in his behalf against the railroad. In response to questions Mr. Garcia testified that he remembered two men coming out to see him and questioning him about the accident in July, 1971. In answer to a number of questions relating to the conversation with a representative of the railroad, Mr. Garcia stated, in effect, that he just didn't remember what he had told this man.

At a later time the defendant called as a witness Mr. R. E. Prysock, a claim agent for the Missouri Pacific Railroad. He testified that he received a letter from Mr. David A. Gibson in which Mr. Gibson asserted a claim against the railroad on behalf of Mr. Garcia for damages resulting from a collision on January 21, 1967 near the intersection of Highway 59 and the Missouri Pacific Railroad tracks. This letter was admitted into evidence. The evidence later developed showed that no suit was ever filed against Missouri Pacific and Mr. Prysock testified that so far as he knew no settlement was made with him. As the result of Mr. Prysock's testimony a statement made by Mr. Garcia before a court reporter was admitted into evidence. This statement was taken on July 2, 1971. In this statement Mr. Garcia said:

"Well, I can't tell you too much except that this truck passed me, and oh, I couldn't say how far ahead of me that he went on ahead of me because it was so foggy that you couldn't hardly see."

He also stated:

· "Just after this truck passed me, then he ran into the train."

He stated that when the truck passed him he was maybe "a block or so" from the railroad track. He didn't know how fast he was going at that time but it couldn't have been over 50. He said that he didn't think the truck could have been making over five miles an hour faster. He said the truck was going something like 50 and shortly after he passed his car the collision occurred. He didn't see the train at any time prior to the collision. At that time he could not remember the details of the trip prior to the accident very well. He did not remember whether he had his windows up or whether the radio was playing in the car or whether he was using his windshield wipers. He couldn't remember whether the truck skidded or slid or whether the brakes on the truck were applied. He stated that he didn't see the blinker lights working and that if the truck hadn't run into the train he probably would have. Later on before he left the scene the lights were working. He stated that he stopped about 10 feet from the blinking lights and they were not on. It appears that the only important matter on which Mr. Garcia was impeached was his testimony at the trial concerning the speed of the truck. It will be noted that the 1967 statement was consistent with his testimony at the trial and contrary to the testimony he gave in the 1971 statement. This was material evidence and was calculated to influence the jury in answering the special issue relating to the speed of plaintiff's truck.

■ The attorney for the defendant attempted to discredit the testimony of Mr. Garcia by asking him if he had discussed his testimony with the plaintiff's attorney; whether he had had his memory refreshed, and whether he appeared without having been subpoenaed, in addition to bringing out the fact that he had asserted a claim against the railroad. The 1967 statement was taken before the letter asserting a claim against Missouri Pacific was written by Mr. Gibson. Mr. Garcia testified that he did not know that Mr. Gibson had asserted a claim against the railroad. The trial court might reasonably have concluded that the defendant was attempting to show that the testimony of Mr. Garcia at the trial was a recent fabrication, and that the 1967 statement was properly admitted to corroborate his testimony. Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (Tex. 1962).

By its points of error 1 and 2 the defendant complains of the overruling of its

motion for instructed verdict. These points cannot be considered. They attempt to incorporate by reference the grounds set out in the motion for instructed verdict. J. Weingarten, Inc. v. Moore, 449 S.W.2d 452 (Tex.1970).

The judgment is affirmed.