J.J. TUCKER, Appellant,

v.

William M. LIGHTFOOT, Appellee.

No. 16792.

Court of Appeals of Texas, San Antonio.

May 4, 1983.

Rehearing Denied June 15, 1983.

Kenneth L. Clark, San Antonio, for appellant.

Sam C. Bashara, San Antonio, for appellee.

Before CADENA, C.J., and CANTU and TIJERINA, JJ.

## OPINION

CANTU, Justice.

This is a medical malpractice case. A Bexar County jury found that appellant Dr. J.J. Tucker, defendant below and a dentist, negligently performed an overdenture procedure on appellee William Lightfoot, the plaintiff below. In response to special issues 1 and 2 the jury affirmatively answered that the appellant was negligent in the diagnosis or treatment of the appellee and

that such negligence was the proximate cause of damages to the appellee. The jury answered the comparative negligence issues in the negative. In the only special issue complained of in this court, Issue No. 7, the jury awarded appellee $31,000.00 for physical pain, mental anguish and disfigurement, and $46,500.00 for loss of earnings in the past.

Appellant raises nine points of error. These points of error fall into two groups, the first directed at alleged jury misconduct, and the second challenging the sufficiency of the evidence to support the jury's answers to the damage issues. We shall address the jury misconduct contentions first.

### The Standard of Review

■ This court, in reviewing the record to determine if misconduct did indeed occur, is bound to apply certain legal criterion. The starting point is Tex.R.Civ.P. 327 (Vernon 1977).

> Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, or the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

Therefore, under Rule 327 the party seeking redress in our court must show that (1) the misconduct actually occurred; (2) that such misconduct was material; and (3) that the misconduct probably resulted in harm in view of the record as a whole. *Strange v. Treasure City,* 608 S.W.2d 604, 606 (Tex. 1980); *Fountain v. Ferguson,* 441 S.W.2d 506, 507 (Tex.1969), *cert. denied,* 396 U.S.

959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1969); *Crawford v. Detering Co.,* 150 Tex. 140, 237 S.W.2d 615 (1951).

In regard to the first requirement, our fact finding jurisdiction is quite limited. As the Texas Supreme Court stated:

> Whether the alleged misconduct has occurred is a question of fact, and if there is conflicting evidence on this issue, the finding of the trial court is binding on appellate review. If, however, the evidence of misconduct is not conflicting, a reviewing court is not bound by a finding of the trial court which is contrary to conclusive evidence. *Brawley v. Bowen,* 387 S.W.2d 383 (Tex.1965); *State v. Wair,* 163 Tex. 69, 351 S.W.2d 878 (1961); *Roming v. McDonald,* 514 S.W.2d 129 (Tex. Civ.App.—El Paso 1974, writ ref'd n.r.e.).

*Strange v. Treasure City,* 608 S.W.2d 604, 606 (Tex.1980).

■ In the case before this court, no findings of fact and conclusions of law were requested of the trial court and none appear in the record. We must presume, therefore, that the court found that no misconduct occurred, provided there is evidence to support such a finding. *Strange v. Treasure City, supra; Barrington v. Duncan,* 140 Tex. 510, 169 S.W.2d 462, 465 (1943); *Monkey Grip Rubber Co. v. Walton,* 122 Tex. 185, 53 S.W.2d 770 (1932).

Appellant alleges two instances of misconduct, the mention of insurance during deliberations, and the use of what appellant calls a "guideline figure" to determine damages.

### Insurance

Two jurors, Donna Howson, one of the dissenting jurors, and Robert Morrison, the jury foreman, testified at the hearing on appellant's motion for new trial. On direct examination, Ms. Howson testified that one of the jurors mentioned that dentists usually carry liability insurance. According to Howson, the statement was made prior to the jury's consideration of the damage issues. She also stated that while she was not aware of who heard the statement, she

stated it could be heard from the opposite end of the table where she sat. On cross-examination Howson admitted that the mention could be characterized as vague and that it was followed immediately by a rebuke from the foreman.

The jury foreman testified that there was one mention of insurance which received a prompt rebuke. He agreed with appellee's attorney that the comment was "casual". He did not know how many jurors heard the comment.

■ While mention of insurance " . . . no longer carries with it the magic for reversals that it once did," *Boyd,* The Current State of Jury Misconduct Claims in Texas Civil Cases, 21 S.Tex.L.J. 23, we are not unaware of the fears expressed in *Barrington v. Duncan,* 140 Tex. 510, 169 S.W.2d 462, 465 (1943) about the effects of a jury's knowledge that damages are to be paid by a collateral source. In *Strange v. Treasure City, supra,* the court quoted the following passage from *Putman v. Lazarus,* 156 Tex. 154, 293 S.W.2d 493, 495 (1956), which we believe shows the current thinking of the Supreme Court on the question presented.

"It is our opinion that a mere casual mention of insurance, without discussion, followed by a prompt rebuke from a fellow juror, does not constitute such misconduct as would require a reversal of the judgment based on the jury's verdict." Since there was not an extended discussion about insurance, and each mention of it was promptly rebuked, we conclude that the misconduct was not material. *See also* 3 R. McDonald, Texas Civil Practice § 14.09 (1970). Pope, Jury Misconduct & Harm, 12 Baylor L.Rev. 355 (1960). We find no evidence in the record that misconduct or harm occurred or resulted to appellant from the incident of which complaint is made. Appellant's fifth point of error is, therefore, overruled.

*"Guideline Figure" or Arbitrarily Apportioned Award of Damages*

■ Appellant's first four points of error complain of the method used by the jury in answering special issue 7a and b, the damage issue. Juror Howson testified at the motion for new trial hearing that when the jury reached the jury room, the jurors were unanimous that the dentist acted negligently.[1] According to her testimony on direct examination, the jurors then took the total amount asked for by appellee and divided it in half because, although they answered the comparative negligence issue in the negative, they felt that the appellee was partially responsible for his damages. After deciding that they were only going to award $77,500.00, Howson testified, the members of the jury without further discussing any of the evidence arbitrarily decided to attribute 60% of the $77,500.00 to loss of earnings and 40% to the pain and suffering portion. According to her testimony on direct examination, there was no discussion of evidence either before the jury decided on the guideline figure or arbitrarily apportioned that amount.

On cross-examination the witness gave contradictory testimony. She stated that the $77,500.00 figure was a compromise between jurors who believed the appellee should have more money and those who thought he should have less. She stated that the jurors did discuss the evidence of both the total amount awarded and the individual amounts to be apportioned to loss of earning and pain and suffering. On recross, she also testified that the 50% figure was a compromise on damages and not a finding on the appellee's negligence. Most importantly, she testified, there was no agreement by the jurors to be bound by any of the figures.

Foreman Morrison, on the other hand, unequivocally stated that the 50% compromise figure was actually arrived at because several jurors believed the appellee to be proportionately negligent. He also testified that the percentages were arrived at after a

1. Apparently, the dissenting jurors at the outset believed the appellee was partially responsi- ble for his own condition.

full discussion of the evidence. There were several votes on the damage figures, Morrison testified, and before a vote was taken on each percentage mentioned, the percentages were reduced to a dollar amount. According to his testimony, there was no agreement to be bound to the amounts by any of the jurors.

The evidence adduced at the motion for new trial hearing being in conflict, we are bound by the implied findings of the fact finder below. *Brawley v. Bowen,* 387 S.W.2d 383 (Tex.1965). The evidence before us would clearly, because of the conflicting testimony, support a fact finding either way. In any case, we cannot say that the finding is "contrary to conclusive evidence" as required by *Strange v. Treasure City, supra.* Indeed, the uncontradicted evidence given by both jurors shows there was no agreement to be bound by the alleged guideline figure and therefore no error is shown. *Landreth v. Reed,* 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ). Appellant's first four points of error are, therefore, overruled.

### The Damage Issues

Appellant, in his sixth, seventh, eighth and ninth points of error argues that there is no evidence, or insufficient evidence to support the jury's answer to Special Issue No. 7, and alternatively, that the answers to that issue are against the great weight and preponderance of the evidence so as to be manifestly unjust. In view of these contentions we will first view the evidence in the light most favorable to the jury's verdict, discarding all adverse evidence and consider only the evidence which supports the verdict of the jury. *Robertson v. Robertson,* 159 Tex. 567, 323 S.W.2d 938 (1959).

### Pain and Suffering

In response to Special Issue No. 7a, the jury found that the sum of $31,000.00 would compensate appellee for physical pain, mental anguish and disfigurement in the past. Appellee's wife testified that appellee could only eat and drink soft foods for several months after the overdenture proce-

dure was completed. According to her, the appellee was forced to remove his dentures when he ate a meal because the pain was too great if he left them in. She further stated that the pain disturbed appellee's sleep and that because of the pain, appellee could not work. She testified that appellee complained about the severity of the pain at least twice a week and that appellee's complaints grew progressively worse for the seven months he underwent treatment.

Appellee testified that he was in constant pain almost everyday for two years and that the pain "was like arthritis." At one time during the treatment appellee was forced to go to the emergency room of a local hospital because the pain was so excrutiating. At that time appellee's face was swollen to the point he could not open his eyes. There is testimony that throughout the beginning of the treatment appellee's teeth were discharging "pus and purallins" regularly. Both of the doctors sponsored by appellee stated that appellee's condition would be very painful and could cause death. The jury was also entitled to consider the embarrassment caused by the condition of the appellee's mouth and the "Bugs Bunny" dentures provided to appellee by appellant. *Southwestern Bell v. Cook,* 30 S.W.2d 497 (Tex.Civ.App.—Fort Worth 1930, writ ref'd n.r.e.).

There is evidence to support the jury's answer to Special Issue No. 7a, and viewed as a whole we find the evidence to be sufficient and the answer to be not against the great weight and preponderance of the evidence as to be manifestly unjust or wrong.

### Evidence of Loss of Earnings

Appellant also assails Special Issue No. 7b in which the jury found that appellee suffered a loss of earnings in the amount of $46,500.00.

The appellee testified that from the years 1972 to 1976 he operated a stock and bond business. He apparently assisted issuers, sellers and buyers in the buying and selling of stocks and bonds. Appellee guessed his

profit was about $20,000.00 per year up to the time he visited appellant for treatment. He testified that his overhead ran about 20% to 25% of monthly income. After he visited appellant in September 1976, appellee testified, his pain and embarrassment caused him to cancel many appointments leading eventually to the closing of his business and his business account in January of 1977.

Appellee did not work from October of 1976 to April of 1977. Appellee then worked from April of 1977 to July of 1977 selling advertising brochures. Appellee testified he was fired from this job because the pain from his teeth made him miss too many days of work. Appellee was unemployed from July of 1977 through February of 1978 when he began work as a real estate agent. He worked as an agent through May of 1978. Appellee worked one day from May of 1978 to the trial on November 17, 1980. The jury was entitled to infer that all of appellee's unemployment was caused by the pain, embarrassment and discomfort of his teeth, proximately caused by appellant's negligence. The jury awarded $46,500.00 in loss of earnings and the trial court ordered a $15,000.00 remittitur.

■ The evidence discloses that appellee was unemployed for some 42 months from the time he started treatment with appellant to the date of trial. At $20,000.00 per year, as appellee testified he earned before the treatment, his monthly income would average about $1,666.67 per month. Appellee argues that the documentary evidence [2] offered reflects that he was averaging $3,031.16 per month for the ten months preceding appellant's treatments, less overhead expenses of 20% to 25% or the net amount of $2,277.17 if computed at 25%. However, appellee admitted at trial that the figure was not an accurate indication of his earnings. The total amount (if the jury reasonably inferred all the unemployment was proximately caused by appellant's negligence as they could well do) comes to

$70,000.14. If this amount is reduced by the amount of overhead for the three months until appellee closed his business, the amount is still greater than the award made by the jury. The jury's award, therefore, is supported by some evidence of probative force amounting to more than a scintilla. Viewing the evidence in the light most favorable to the verdict, we find that there is some evidence to support special issue 7b. Appellant's no evidence point is therefore overruled.

*Sufficiency of Lost Earnings Evidence*

We must now look at *all* the evidence to determine whether it is sufficient to sustain the award (as reduced by remittitur) under the legal tests set out below. While loss of past earnings usually poses no great problem of proof, in this case the point troubles us as appellee was the sole employee in his own business. The appellee did not pay himself a salary, but periodically withdrew the profits of his business from his business checking account as needed.

■ The appellee testified that he had no income tax returns to substantiate his earnings from 1974–1976 but he "guessed" he made $20,000.00 a year before his injury. The record reflects that appellee was able to work very little and earned some undisclosed amount after the injury by working parts of some seven months. Without some evidence as to the amounts appellee earned during the months of April, May and June of 1977 and February, March, April and May of 1978 the jury was not justified in concluding that any loss of earnings occurred for these periods. There is, however, evidence that appellee did not work at all for a period amounting to forty-two months. This period of unemployment could be taken into consideration by the jury in arriving at lost earnings.

We realize that the evidence is never the same in any two cases and that each case stands on its own, *Producers Chemical Co.*

---

**2.** Plaintiff's exhibits 13 and 14 are the statements of the checking account of Alamo Securities, appellee's business entity.

*v. McKay,* 348 S.W.2d 91 (Tex.Civ.App.— Amarillo 1961), *aff'd,* 366 S.W.2d 220 (Tex. 1963), yet loss of earnings is much like other elements of damages, such as impairment of capacity to earn money. Value of loss of earnings can sometimes be established with some degree of exactness and sometimes proof cannot be made. The law only exacts the kind of proof of which the fact to be proved is susceptible, but it does exact that. However, if the jury is not so informed as to permit them to allow for the full extent of such loss they can allow for the part of which they are sufficiently informed. *Dallas Consolidated Electric Street Railway Co. v. Motwiller,* 101 Tex. 515, 109 S.W. 918 (1908).

 We believe that appellee's testimony that he earned nothing for a period of forty-two months is sufficient to meet the proof required to establish the fact of lost earnings. *Cf. Kulms v. Jenkins,* 557 S.W.2d 149 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *El Paso Electric Railway Co. v. Murphy,* 49 Tex.Civ.App. 586, 109 S.W. 489 (Tex.App. 1908, writ ref'd). *See also Missouri Pacific Railroad v. United Transports, Inc.,* 518 S.W.2d 904 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (where the evidence established no earnings for many months). Compensation for the loss of time resulting from a personal injury is to be measured by the amount of money which the injured person might reasonably have earned in the same time by the pursuit of his ordinary occupation, *Texas & N.O.R. Co. v. Wood,* 166 S.W.2d 141 (Tex.Civ.App.—San Antonio 1942, no writ), or by the amount he commonly earned. *Galveston, H & S.A. Railway Co. v. Mallott,* 6 S.W.2d 432 (Tex.Civ.App.—Galveston 1928, err. dism'd).

As fact finders the jury could have believed that appellee might reasonably have continued to earn $20,000.00 per year or an average of $1,666.67 per month. Such a finding would equate to $70,000.14 based on a period of forty-two months at $1,666.67 per month. We do not believe that such a figure would have been based upon speculation. Nevertheless, the jury only awarded $46,500.00 which was ultimately reduced to $31,500.00 by the trial court's requirement of a remittitur of $15,000.00.

Proof of loss of earnings has frequently been based upon estimate of average earnings computed on a daily basis, *Southwestern Bell Telephone Co. v. Sims,* 615 S.W.2d 858 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Freeman v. Mireles,* 60 Tex. Civ.App. 324, 127 S.W. 1162 (1910); *City of Dallas v. Muncton,* 37 Tex.Civ.App. 112, 83 S.W. 431 (Tex.Civ.App.1904, no writ); on a weekly basis, *Producers Chemical Co. v. McKay, supra; Missouri Pacific Railroad v. United Transports, Inc., supra;* or on a monthly basis, *Glazer v. Woodard,* 127 S.W.2d 938 (Tex.Civ.App.—Waco 1939, dism. judgm. cor.). The proof in the instant case was susceptible of computation on a monthly basis to a reasonable certainty.

Although we have not considered plaintiff's exhibits 13 and 14, because they are hearsay and admittedly of no probative value, we are not unaware that a computation of lost earnings using the figures contained therein would have produced a greater sum. We purposely have not considered plaintiff's exhibits 13 and 14 in either of the tests set out above. These exhibits are the statements of the checking account of Alamo Securities, appellee's business for the ten months preceding the inception of appellee's treatments by appellant and for two months thereafter. Counsel for appellant argues they show gross revenues of $68.01 per year for that time. Appellee testified under oath that plaintiff's exhibits 13 and 14 do not accurately reflect the profits of his business. In view of the much smaller amount awarded by the jury subsequently reduced even smaller by remittitur, we cannot say that the jury's finding on loss of earnings was against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

*Excessiveness of Award and Remittitur*

 In determining whether or not a verdict is excessive, the evidence in support of the award must be viewed in its most favorable light. *Green v. Rudsenske,* 320

S.W.2d 228 (Tex.Civ.App.—San Antonio 1959, no writ).

 In viewing the evidence in support of the award made we cannot say that an award amounting to $23,500.00 less than supported by the record is excessive. Nor are we justified in concluding that the award made was the result of passion, prejudice or other improper motive calculated to benefit the appellee.

We now consider appellee's cross-point complaining that the trial court erred in requiring a remittitur of $15,000.00. As a condition for overruling appellant's motion for new trial the trial court required appellee to remit $15,000.00 of his lost earnings award. Remittitur was made over objection.

Our standard of reviewing the propriety of the trial court's order requiring remittitur was carefully delineated in *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835 (1959), where the Court stated:

> . . . [W]here the trial judge has ordered a party to remit a portion of the jury verdict as a condition for overruling a motion for new trial the Court of Civil Appeals * * * should allow the trial court's action to stand unless it be of the opinion that the remittitur ordered by the trial court, when considered in the light of the whole record, would render the order of remittitur manifestly unjust. If, in the light of all the facts and circumstances, the trial court's order of remittitur was manifestly unjust, the Court of Civil Appeals should restore the remittitur or such part thereof as the Court of Civil Appeals deems necessary to prevent the order from being manifestly unjust and render such judgment as the trial court should have rendered.

 Guided by the foregoing standard we must agree with appellee that the trial court's order of remittitur was manifestly unjust. The award entered by the trial court after remittitur reduced the jury's award to less than 50% of that amount finding support in the record. In fact the jury award itself constituted barely 66% of lost earnings which could have been award-

ed under the facts and circumstances disclosed by the record. We hold that a further reduction of $15,000.00 through remittitur is manifestly unjust and we therefore, restore the amount ordered remitted and reform the judgment to reflect that appellee is awarded $46,500.00 for loss of earnings. As reformed the judgment of the trial court is affirmed.