TRAILWAYS, INC. and Trailways of Texas, Inc., Appellant,

v.

Juan Hernandez MENDOZA a/k/a Juan Hernandez, Appellee.

No. 4–86–00598–CV.

Court of Appeals of Texas, San Antonio.

Dec. 31, 1987.

Opinion on filing of Remittitur Jan. 13, 1988.

Richard N. Francis, Jr., San Antonio, for appellant.

Joseph R. Preston, John W. Clark, Mission, for appellee.

Before ESQUIVEL, REEVES and DIAL, JJ.

OPINION

ESQUIVEL, Justice.

This is an appeal from a personal injury suit. Juan Hernandez Mendoza (appellee) was a passenger on a Trailways, Inc. and Trailways of Texas, Inc. (appellant) bus when the bus, driven by Francisco Vasquez, was involved in a head-on collision with a pickup truck, driven by Eloy Espinoza. The bus turned over, injuring appellee.

The jury found the following:

SPECIAL ISSUE NO. 1

Was the negligence, if any, of any party a proximate cause of the injuries to Juan Hernandez Mendoza, aka: Juan Hernandez?

| | |
|---|---|
| Eloy Espinoza | Yes |
| Francisco Vasquez | Yes |

SPECIAL ISSUE NO. 2

For each party you found in answer to Special Issue No. 1 to have caused the injuries to Juan Hernandez Mendoza, aka: Juan Hernandez, find from a preponderance of the evidence the percentage attributable to each.

| | |
|---|---|
| Negligence, if any, of Eloy Espinoza | 15% |
| Negligence, if any, of Francisco Vasquez | 85% |

In answer to Special Issue No. 3 regarding damages, the jury found:

| | |
|---|---|
| (a) Physical pain and mental anguish in the past. | $ 75,000.00 |
| (b) Physical pain and mental anguish that, in reasonable probability, he will suffer in the future. | $ 50,000.00 |
| (c) Loss of earnings in the past. | $ 15,888.00 |
| (d) Loss of earning capacity that, in reasonable probability, he will suffer in the future. | $102,960.00 |
| (e) Reasonable and necessary medical expenses in the past. | $ 10,000.00 |

The trial court reduced the $253,848.00 jury award by fifteen percent (15%), the percentage of causation attributable to Espinoza, and entered judgment for appellee in the amount of $215,770.80.

Appellant timely filed a motion for new trial which was denied by the trial court. This appeal resulted.

Appellant raises several points of error, which we consider in eight groups.

## BUS DRIVER'S NEGLIGENCE

■ Appellant alleges the evidence is factually insufficient to support the jury's finding in Special Issue No. 2 that the negligence of Vasquez was eighty-five (85%) of the cause of appellee's injuries.

We note that appellant does not complain of the answer to Special Issue No. 1, finding that Vasquez was negligent and that his negligence was a proximate cause of appellee's injuries. *Compare Perez v. Baker Packers,* 694 S.W.2d 138, 142 (Tex. Civ.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

We consider all the evidence in the record to determine if the evidence is factually insufficient to support the answer to Special Issue No. 2, or if the answer is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Garza v. Alviar,* 395 S.W.2d 821, 834 (Tex.1965).

Appellee introduced evidence that Vasquez was going at least sixty-eight (68) miles per hour where the speed limit was fifty-five (55). Appellee also elicited testimony that Vasquez could have taken, but did not take, evasive action by moving the bus to the right onto the paved shoulder, thereby avoiding the pickup truck. There was evidence that Vasquez said, after the accident, that he saw the pickup truck weaving "way down the road" and then start to come over into Vasquez' lane. Vasquez then hit the brakes.

The trial court instructed the jury on Vasquez' higher standard of care as a bus driver, which he owed to appellee. The charge provided that "negligence" as applied to Vasquez means failure to use a high degree of care. The charge stated that in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event might have reasonably resulted. Also in the charge, "ordinary care" as applied to Vasquez means a high degree of care which would have been used by a very cautious, competent, and prudent person. *Compare Mac-Connell v. Hill,* 569 S.W.2d 524 (Tex.Civ. App.—Corpus Christi 1978, no writ) (in apportioning the percentage of negligence that caused injuries, the jury should be instructed to consider the different negligence standards of an adult and a child).

The evidence also showed that Espinoza was an unlicensed, seventeen year old driv-

er. Espinoza improperly crossed the center line into the bus' lane where the accident occurred.

The rule is well established in this state that an appellate court will not disturb the finding of a jury on conflicting evidence where there is some evidence to support this verdict unless the verdict is so overwhelmingly against it as to shock the conscience or to show clearly that the conclusion reached was wrong, or was the result of passion, prejudice, or improper motive. *Swinney v. Winters*, 532 S.W.2d 396 (Tex. Civ.App.—San Antonio 1975, writ ref'd n.r. e.).

We find the evidence is sufficient to support the jury's answer to Special Issue No. 2, and the answer is not against the great weight and preponderance of the evidence.

## DOCTOR'S TESTIMONY

■ Appellant asserts that the trial court erred in allowing medical testimony regarding a doctor's observations and conclusions based on X-rays which were never produced nor admitted into evidence.

Dr. Cesar Luis testified about appellee's injuries. According to Luis, appellee suffered from a fracture-dislocation of the cervical spine. The doctor said that tomograms and X-rays were taken of appellee's cervical spine which showed a seven millimeter displacement between two vertebra. Luis stated that a tomogram is a series of X-rays showing different layers or slices of the spine. Dr. Luis testified that a displacement of the vertebral body is a dislocation, and there cannot be a dislocation without some fracture. The doctor said that with the type of injury appellee sustained, the doctor assumes there is a fracture and treats the patient as if one exists.

Prior to the introduction of the doctor's testimony, in the form of a video deposition, appellant's counsel objected to any answers or testimony of the *doctor* concerning fractures of the neck, any X-rays or the results of X-rays, or conclusions and opinions regarding fractures or dislocations of the neck. Appellant based the objection on the fact that the X-rays were not in evidence. The trial court overruled the ob-

jection and granted appellant a running objection to the doctor's testimony.

Appellant argues it is error to allow a doctor to testify about X-rays when the X-rays are not produced so as to allow the opponent an opportunity to properly cross-examine the witness. Appellant relies on *Avila v. United States Fidelity & Guaranty Co.*, 551 S.W.2d 453, 457 (Tex.Civ. App.—San Antonio 1977, writ ref'd n.r.e.). Additionally, appellant points to *Avila* which also held that admission of a doctor's testimony pertaining to X-rays never admitted into evidence is error when the X-rays were not sufficiently proved up through positive evidence (1) as to who made the X-rays; (2) that the X-rays were taken by a qualified technician or doctor; (3) that the X-rays correctly portrayed what they purport to represent; and (4) that the X-rays actually portrayed the portion of the body where the injury was involved. *Avila v. United Fidelity & Guaranty Co.*, 551 S.W.2d at 457.

*Avila* was decided prior to the adoption of the Texas Rules of Evidence in 1983 and the 1984 amendments to the rules. Appellant recognizes in the brief that the Rules of Evidence may apply, but argues that rule 703 allows an expert to base his opinion on inadmissible facts if they are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences. Appellant alleges there is no testimony indicating that an X-ray is of a type reasonably relied upon by experts in the doctor's particular field. Appellant concludes that the proper predicate was not laid for the admission of Dr. Luis' testimony.

Appellant's objection, however, was not that the X-rays were inadmissible, requiring a showing under rule 703 that they were of a type reasonably relied upon; appellant's objection was only that the X-rays were not admitted into evidence. We find rule 705 is dispositive.

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in

any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data. TEX.R.EVID. 705.

We hold that the trial court did not err in admitting Dr. Luis' testimony although the X-rays were not in evidence. We observe that appellant did not attempt to require Dr. Luis to produce the X-rays on cross-examination. Rule 705 adequately addresses the concerns this court expressed in *Avila.*

Appellant's point of error is without merit and is overruled.

### PAST MEDICAL EXPENSES

■ Next, appellant complains that the evidence is legally and factually insufficient to support the jury's answer to Special Issue No. 3(e) for reasonable and necessary medical expenses in the past, and that the damages are excessive.

In reviewing a legal insufficiency point of error, we consider only the evidence and inferences tending to support the finding and disregard all other evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d at 823. We hold there is evidence of past medical expenses.

However, we hold the evidence is factually insufficient to support the jury's answer to Special Issue No. 3(e). Appellee is entitled only to the reasonable medical expenses necessarily incurred as the result of the accident. *City of Rosenberg v. Renken,* 616 S.W.2d 292, 293 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). The evidence shows appellee's medical expenses totaled $8,683.30. The jury found $10,000.00 in medical expenses. The evidence is factually insufficient to support the $10,000.00 finding.

Appellant's point of error concerning excessive damages is the same as the factual insufficiency allegation. *See Pope v. Moore,* 711 S.W.2d 622, 624 (Tex.1986).

### PAST PAIN AND MENTAL ANGUISH

■ Appellant claims the evidence is legally and factually insufficient to support the jury's answer to Special Issue No. 3(a), finding damages of $75,000.00 for past physical pain and mental anguish.

Initially, we find evidence of past physical pain and mental anguish. Appellant's no evidence point is overruled. We must now determine if the evidence is factually sufficient to support the jury's answer.

Appellee testified that after the accident, he first thought he was just shaken up. Appellee was placed in traction at the hospital, and indicated he was in pain. He was given painkillers every four hours. Screws were put into the sides of appellee's skull. Cables and weights were attached to stretch his spinal column. Appellee was in traction for twenty-eight (28) days. After he was removed from traction, appellee had to wear a cervical brace for ninety (90) days. Appellee testified he was in pain all the time at the hospital and while he was wearing the cervical brace. Appellant said he suffered pain after the brace was removed, and he took painkillers for six months after his release from the hospital. The medication helped, but the pain would return.

Dr. Luis testified that pain from the traction is nothing like the pain a patient has due to the injury, and once the tongs or screws are applied a patient feels "a lot" of relief. Twice, the tongs or screws had to be relocated on appellant's skull.

Dr. Luis also stated that on appellee's first day in the hospital the nurses' notes reflected, "patient pulled up and told to stay on back in correct alignment." The notes show that some time later he had to be instructed again to stay in bed. Appellee was told to stay in bed or he would be sent to a mental institution. Additional notations stated appellee took the weights off and climbed out of bed, and twice appellee did not lay on his back. Luis also testified that many patients cannot tolerate the idea of being in traction for five weeks, and they suffer tremendous psychological shock.

The discharge nurse's notes stated that appellee had no complaint of pain when he was released.

We conclude the evidence is factually sufficient to support the jury's answer regarding past physical pain and mental anguish. Appellant's point of error is overruled.

## FUTURE PAIN AND MENTAL ANGUISH

■ Appellant next asserts that the jury's answer to Special Issue No. 3(b), finding damages of $50,000.00 for future physical pain and mental anguish, is not supported by legally or factually sufficient evidence. Appellant's points of error are overruled.

There is evidence of future physical pain and mental anguish. We also hold that the evidence is factually sufficient to support the jury's finding.

Appellant testified that at the time of trial he still experienced pain in the way he sleeps or moves his body. He said if he strains something or bends over and strains in a strenuous position, he is in pain.

Dr. Luis testified that the last time he saw appellee, eight months before trial, appellee had occasional headaches and cervical pain. Luis told appellee to use analgesics for pain, if needed. The doctor stated that appellee has a ten to fifteen percent disability caused by pain. The parties stipulated that appellee's life expectancy was thirty-three (33) years.

Appellant's points of error regarding future pain and mental anguish are overruled.

## LOSS OF PAST EARNINGS

■ Appellant's next points of error address legal and factual insufficiency of the evidence to support Special Issue No. 3(c) as to the loss of past earnings in the amount of $15,888.00.

The record shows evidence of loss of past earnings. We must now consider the factual sufficiency of the evidence to support the jury's finding.

Appellee did not submit the issue in terms of "diminished earning capacity," but rather "loss of earnings in the past."

*See Dallas Ry. and Terminal Co. v. Guthrie*, 146 Tex. 585, 210 S.W.2d 550 (1948); *T.J. Allen Distributing Co. v. Leatherwood*, 648 S.W.2d 773 (Tex.App.—Beaumont 1979, writ ref'd n.r.e.).

[L]oss of earnings is much like other elements of damages, such as impairment of capacity to earn money. Value of loss of earnings can sometimes be established with some degree of exactness and sometimes proof cannot be made. The law only exacts the kind of proof of which the fact to be proved is susceptible, but it does exact that. However, if the jury is not so informed as to permit them to allow for the full extent of such loss they can allow for the part of which they are sufficiently informed.

*Tucker v. Lightfoot*, 653 S.W.2d 587, 593 (Tex.App.—San Antonio 1983, no writ).

Appellee testified that at the time of the accident his take home pay at Munoz Roofing was about $180.00 per week. Appellee said he was out of work for one year. Appellee also testified as follows:

Q: Now, when you gave us this figure of $180.00 for Munoz Roofing as your weekly wage, does that include overtime or was that your regular weekly wage?

A: Just the regular week.

Q: So if you worked more with Munoz, you would have gotten more overtime; is that correct?

A: Yes, sir.

There is no testimony, however, that appellee would have worked overtime at Munoz Roofing, or how much overtime he would have worked during the year appellee missed work.

Appellee's attorney, through appellee, calculated that $180.00 per week times four weeks to a month, times twelve months in a year equals $8,640.00. There are, however, fifty-two (52) weeks in a year, and $180.00 per week times fifty-two equals $9,360.00. Therefore, according to the evidence, the largest amount of money the jury could have found appellee lost as past earnings was $9,360.00, since the jury was not bound by appellee's calculations. The

evidence is factually insufficient to support the $15,888.00 answer by the jury.

## LOSS OF FUTURE EARNING CAPACITY

■ Appellant raises legal and factual insufficiency points of error for the answer to Special Issue No. 3(d)—loss of future earning capacity to the extent of $102,-960.00. We find there is evidence of a loss of future earning capacity.

Appellant testified that he is working as a porter running errands for a car dealership. He said he could not work as a sandblaster, the work he performed prior to his job with Munoz Roofing, because the heavy lifting put a strain on the neck. He also could not do roofing work because that requires climbing and carrying shingles. Appellee tried auto mechanics, but found it put strain on his neck and back. Appellee testified he takes home $116.39 per week as a porter.

Upon examining all the evidence for appellant's factual insufficiency point of error, we find that appellee's 1985 Form W-2 Wage and Tax Statement indicates that appellee earned $9,375.76, and $792.84 of federal income tax and $660.99 of social security tax were withheld.

Appellee testified that he is making more money as a porter than he was as a roofer, but he works as much overtime as he can. He also stated that the W-2 form reflected overtime pay and a bonus.

In calculating the amount of earning capacity appellee lost, appellee's attorney, again through appellee, multiplied $8,640.00 take home per year as a roofer by thirty-three years (life expectancy) to get a figure of $285,120.00 as lifetime earnings from Munoz Roofing. Next, appellee figured $116.39 take home per week as a porter, times four weeks per month, times twelve months per year, times thirty-three years equals $184,140.00 in lifetime earnings as a porter. Subtracting the two results, appellee's counsel arrived at a figure of $100,980.00 as the difference in future earning capacity.

As noted above, however, fifty-two weeks comprises one year. The difference between $180.00 and $116.39 per week, times fifty-two weeks, times thirty-three years is $109,154.76.

■ The jury was not bound by the 1985 W-2 form, especially in light of appellee's testimony that the W-2 form amount included overtime pay and a bonus. We further point out that Special Issue No. 3(d) concerns loss of future earning capacity, not the loss of future earnings. The fact that an injured party may work and earn as much or more than he did before the injury does not bar him from recovering for loss of earning capacity. *Southwestern Bell Telephone Co. v. Sims*, 615 S.W.2d 858, 864 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ).

We hold the evidence is factually sufficient to support the jury's finding of $102,-960.00 for loss of future earning capacity.

## PREJUDGMENT INTEREST

In the remaining point of error, appellant contends the trial court erred in awarding prejudgment interest because there are no pleadings to support the award.

Appellant concedes that prejudgment interest on accrued damages is proper in a personal injury action. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985).

Appellant correctly states that a plaintiff must plead for prejudgment interest sought at common law and that rule 301 applies requiring that a judgment conform with the pleadings. *Benavidez v. Isles Construction Co.*, 726 S.W.2d 23, 25 (Tex. 1987).

Appellant argues that appellee did not plead for prejudgment interest and that appellee did not request or file a trial amendment to include any prayer for prejudgment interest. We disagree.

Appellee filed a written, postverdict motion for prejudgment interest which contained a specific prayer for prejudgment interest. In the judgment, the trial court awarded prejudgment interest on the sum of $85,754.80.

■ The trial court may allow post-verdict trial amendments praying for prejudgment interest. *Benavidez v. Isles Construction Co.,* 726 S.W.2d at 25; *see* TEX.R.CIV.P. 66. The trial court has broad discretion in whether to allow the trial amendment. *Benavidez v. Isles Construction Co.,* 626 S.W.2d at 25.

■ Although the pleading for prejudgment interest was styled a "Motion for Prejudgment Interest" rather than a "Trial Amendment," the trial court did not abuse its discretion in considering and granting the relief sought by appellee. TEX.R.CIV. P. 71. Appellant's final point of error is overruled.

We have found the evidence is factually insufficient to support the jury's answers of $10,000.00 for Special Issue No. 3(e) and $15,888.00 for Special Issue No. 3(c). The evidence was only sufficient to support findings of up to $8,683.00 for 3(e) and $9,360.00 for 3(c).

The jury found damages in the amount of $253,848.00, 85% of which was $215,770.80. Prejudgment interest was awarded on the sum of $85,754.80.

We calculate that the evidence was factually sufficient to support damages in the maximum total amount of $246,003.30, 85% of which yields $209,102.80. The maximum amount of damages subject to prejudgment interest supportable by the evidence is $79,086.80, since Special Issue No. 3(c) and 3(e) damages are subject to prejudgment interest.

Therefore, the evidence is factually insufficient to support $6,668.00, the difference between the $215,770.80 and $209,102.80.

Accordingly, appellee is given fifteen (15) days from the date of this opinion to file a remittitur of $6,668.00 and the prejudgment interest on the sum of $6,668.00. If appellee should file the remittitur within the given period the judgment will be affirmed as modified; otherwise the judgment will be reversed and the cause remanded for new trial. TEX.R.APP.P. 85; *see Larson v. Cactus Utility Co.,* 730 S.W. 2d 640, 641 (Tex.1987).

OPINION ON FILING OF REMITTITUR

On December 31, 1987, this Court stated by opinion that if appellee, Juan Hernandez Mendoza, would file a remittitur of $6,668.00 and the prejudgment interest on the sum of $6,668.00 within fifteen days, the judgment of the trial court would be affirmed as modified; otherwise the judgment would be reversed and the cause remanded for new trial. See page 63.

On January 6, 1988, appellee filed a remittitur of $6,668.00 and the prejudgment interest on $6,668.00. Appellee's remittitur cures the reversible error, and the remittitur is accepted.

Accordingly, the judgment is modified to reflect an award of damages in the amount of $209,102.80 and prejudgment interest on the sum of $79,086.80.

The judgment is affirmed as modified. TEX.R.APP.P. 85.